William T. Cownsr, J.
The People move to reargue this courts order dated April 24, 1972 granting defendant’s motion to suppress as evidence a revolver, found under the driver’s seat.
A recorded ‘ radio run ’ ’ was received by Patrolmen DanielewsM and Luney, that at Broadway and Walton there was a man with a gun in a red 1968 Chevrolet, plate Ho. 9238 KH. They *917 were then in an unmarked car about a block away. As they approached the described car, it was pulling into the right-hand side of the curb of Walton Street. They identified themselves and informed defendant of the nature of their call. Patrolman Danielewski asked defendant if he had a gun. Upon receiving a negative answer, he ordered defendant out of the car. While defendant was being frisked by Patrolman Luney, Patrolman Danielewski “ searched under * * * the driver’s seat and pulled out a .32 revolver * * * fully loaded.” The People concede that prior to the search defendant did not appear to be violating any law and that the arrest was made after the search and seizure of the gun.
It is urged upon the court that People v. Jones (39 A D 2d 949 [2d Dept.]) and Adams v. Williams (407 U. S. 143), both decided after this court’s decision and order, sanctioned the patrolman’s search under the seat. People v. Jones (supra) is a memorandum opinion that reversed the lower court’s order of suppression. The record on appeal in the Jones case (supra) discloses that the court approved the search on a radio call originating from an unidentified informer “ that there were two male negroes in a late model Plymouth leaving Howard Avenue in the vicinity of Eastern Parkway in possession of a gun”. The defendant had committed no suspicious acts nor violated any law prior to the search. The gun was found on the seat where defendant had been seated and came into view when defendant left the car to be frisked. Adams v. Williams (supra), deals with a search of a gun in the waistband of an individual seated in a car. The officer had acted on a direct tip from an informer. In each case the court was confronted with the troublesome issue of the circumstances warranting a search and seizure without doing violence to the Fourth Amendment of the Constitution.
Our courts have recognized that “ One simple rule will not cover every situation ” (Adams v. Williams, supra, p. 147) and that “ each case of this sort will, of course, have to be decided on its own facts ” (Terry v. Ohio, 392 U. S. 1, 30; Sibron v. New York, 392 U. S. 40). However, some basic sanction should be given to police investigative techniques in the enforcement of citizens’ rights of protection as counterbalanced by an individual’s privilege against intrusive action.
Extensive research by this court has not disclosed a factual counterpart nor a precedent for the search made under the seat of the car by police acting in response to a recorded radio call that gave the exact description of the car, its color, license plate *918 number and location. Concededly, the information was furnished by an unidentified informer.
Historically, our founding fathers sought to establish a constitutional safeguard against the cruel indignities of wanton searches made in the name of constituted law and authority. Thus, not every intrusion was banned. ‘ The right of the people to be secure in their person [wasj against unreasonable searches and seizures ” (TJ. S. Const., 4th Arndt.). The interpretation of what may be “ unreasonable ” under given circumstances has been difficult for our courts. Is “ the criminal * * to go free because the constable has blundered ” (People v. Defore, 242 N. Y. 13, 21) or “ the criminal goes free, if he must, but it is the law that sets him free.” (Mapp v. Ohio, 367 U. S. 643, 659).
Over the years, from Weeks v. United States (232 U. S. 383), establishing the exclusionary rule against evidence improperly seized by Federal authorities, to Mapp v. Ohio (supra), applying the rule with equal force against State and local enforcement agencies, judicial and legislative wisdom dictated exceptions to the rule.
Early, in Carroll v. United States (267 U. S. 132) followed by Husty v. United States (282 U. S. 694) and Brinegar v. United States (338 U. S. 160), automobiles and other movables that could quickly leave the locality or jurisdiction were placed in a category separate and distinct from stationary areas. Searches were authorized on the basis of probable cause which was defined with sufficient elasticity to permit officers ‘ ‘ room * * * for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.” (Brinegar v. United States, supra, p. 176). In Chambers v. Maroney (399 U. S. 42), the court recognized that an officer answering a broadcast over a police radio had probable cause to search the vehicle when it and the occupants fitted the given description. (See, also, Ballou v. Commonwealth of Massachusetts, 403 F. 2d 982, cert. den. 394 U. S. 909; Nash v. United States, 405 F. 2d 1047; and Klingler v. United States, 409 F. 2d 299.)
From the Weeks and Carroll cases to the Jones and Adams decisions {supra) we can perceive an evolving philosophy that balanced the public need of protection against the practice of “ wholesale harassment by certain elements of the police” (Terry v. Ohio, 392 U. S. 1, 14, supra). Limiting officers to a search of a particularly described automobile, “ does not mean * that every traveler along the public highways may be *919 stopped and searched at the officers’ whim, caprice or mere suspicion.” (Brinegar v. United States, 338 U. S. 160, 177, supra). “ The exclusory rule has its limitations * * * as a tool of judicial control. It cannot properly he invoked to exclude the products of legitimate police investigative techniques * (Terry v. Ohio, supra, p. 13).
In this background of refinement of individual rights looms a rationale that can envision a harmonious blending of views permitting intrusive police action when performed pursuant to information furnished by a reliable informer or by a recorded police radio call. Thus, where the police act on information alleged to have been received directly from an informer, the reliability of the informer and his information rather than the honesty of the officer becomes the crucible test of the existence of probable cause (People v. Malinsky, 15 N Y 2d 86; People v. Arthurs, 24 N Y 2d 688; People v. Hendricks, 25 N Y 2d 129; People v. Brown, 28 N Y 2d 282; People v. Castro, 29 N Y 2d 324; and Adams v. Williams, 407 U. S. 143, supra). However, with the new methods of communication — radio, television, walkie-talkie and electronic devices — the test of probable cause cannot remain static and must be flexible to meet the ingenuity of man.
The officer was duty bound to pursue the information received over the radio. It was not within his province to question the reliability of the official communication even though the source was anonymous (People v. Horowitz, 27 A D 2d 367). “ The details * * * furnished an officer via police radio can be taken by him as reasonably trustworthy information upon which to base his actions ” (Klingler v. United States, 409 F. 2d 299, 303, supra).
The exactness of the description of a person or his vehicle and the surrounding facts contained in a radio alarm determine the probable cause for the search and the extent thereof. (People v. Taggart, 20 N Y 2d 335, app. dsmd. 392 U. S. 667; People v. Eugene K. K., 27 N Y 2d 619; People v. Horowitz, 27 A D 2d 367; People v. Fenuta, 39 A D 2d 674; and People v. Jones, 39 A D 2d 949, supra). The descriptive detail in People v. Jones (supra), received over the radio car was far less than in the instant case. Nevertheless, the court approved the search.
If the defendant had been frisked while seated in the car, such a search would not have been limited to defendant’s person only, and all areas “ into which an arrestee might reach in order to grab a weapon ” (Chimel v. California, 395 U. S. 752, 763) would be permitted, including the area under his seat. It is the *920 “ * grabbable ’ area from which defendants might have obtained weapons ” (People v. Ernest E., 38 A D 2d 394). See, also, United States v. Nygard (324 F. Supp. 863, 866-867), wherein the court stated: ‘ Indeed, that police officer had a right to make that search without defendant’s consent and without violating the Fourth Amendment * * * it was obvious to the arresting officers that the gun was not on his person. The officers had probable cause to search the car to determine whether defendant was in fact carrying a concealed weapon * * * The words * upon or about his person ’ have been read by the Missouri courts to mean the concealment of a., gun ‘ in such close proximity to the accused as to be within his easy reach and * * * control ’ ”. (Cf. People v. Pugach, 15 N Y 2d 65, cert. den. 380 U. S. 936.)
Investigative expertise, the “ superior insight into criminal activity gained by those in constant observation ” dictates such a search and establishes the probable cause. It is the ‘ proof of the pudding ” on a “ narrow question of whether that belief [that search in conjunction with a frisk] was reasonably engendered, the fact that it was correct should receive some recognition.” (People v. Meyers, 38 A D 2d 484, 486; see, also, People v. Fenuta, 39 A D 2d 674, supra).
The Fourth Amendment of the Constitution was conceived as a shield to the innocent and as a bar to officious or misguided officers of the law and never as a deterrent against ordered investigative procedures objectively followed in performance of a police function. The patrolmen were here duty bound to pursue the radio call and make the search. Their recording of the data as given to them (description of the ear and license plate number) removed any possible inference that their search was motivated by whim, caprice, “ suspicions [that] remain merely ‘ hunches ’ ” (People v. Johnson, 30 N Y 2d 929, 930) or “ subjective good faith.” (Beck v. Ohio, 379 U. S. 89, 97).
Accordingly, the People’s motion to reargue is granted, and upon such reargument, the order of this court dated April 21, 1972 is vacated and defendant’s motion to suppress the evidence seized from defendant is denied.