Eugene B. Canudo, J.
May a uniformed service officer, charged with the duty of crime control in a public high school, act on suspicion alone in investigating possible possession of drugs by a student ? To what degree, if any, is he restricted by the constitutional rights of individual students? These are the questions that must be answered in this motion to suppress evidence.
A Spanish-speaking student at Boys’ High School in Brooklyn reported that someone had taken his calendar-type Timex wristwatch. The dean of the .school transmitted this information to the. uniformed school service officer who is the complainant herein. All that the complainant had to go by was the report that the perpetrator of the theft wore a corduroy coat with a fur collar. He did see a student (the defendant) wearing a coat of that description. Without saying why, he invited the student into the dean’s office and asked him to show him his wristwatch. The student did so. It was not the stolen watch. The complain *801 ant testified that when the defendant’s coat was opened he observed a slight bulge in a front pocket of his dungarees, with an inch or so of a brown envelope protruding from the top of the pocket. He asked the .student to empty his pockets. This he did. There were three brown envelopes. Two of them contained what looked like — and turned out to be — marijuana. One was empty. There were also some pills and a pipe. The complainant called in a police officer attached to the school, and the defendant was arrested for possession of dangerous drugs. He testified at this hearing that when the complainant stopped him he was wearing a coat that was unlike the one described by the complainant. He said that there were no envelopes showing at the top of his pocket. He charges that the seizure was illegal, and seeks suppression of the marijuana under CPL 710.20. In ruling on the motion, the court accepts the testimony of the security guard with respect to the defendant’s coat and the location of the brown envelope in the defendant’s pocket.
The security guard is not classified as a peace officer or as a police officer as those terms are defined in subdivisions 33 and 34 of CPL 1.20. However, when asked at the hearing to describe the scope of his duties, he stated that he is responsible for school safety and for the control of crime, school disturbances and student negligence.
If the complainant acted as a private individual, there could be no suppression. This was the meaning of People v. Horman (22 N Y 2d 378), where a loaded pistol produced by the frisking of a suspect by Klein’s security manager, after the apprehension of the suspect by the store’s detectives, was admitted into evidence. The Fourth Amendment, .said the court, was never intended to proscribe private activity. It was meant to limit the activities of governmental agents only. Was our complainant, then, a “ governmental agent ” so as to be bound by Fourth Amendment restrictions? It would seem so. In People v. Jackson (65 Misc 2d 909, affd. 30 N Y 2d 734) the Appellate Term, First Department, characterized the Coordinator of Discipline of a high school (a member of the teaching staff), as a governmental official but not a law enforcement officer. The distinction is hard to .see, in this particular reference. However, his action was .sustained when, after taking a student out of his classroom, he observed a persistent touching by the boy of a bulge in his pocket, gave chase when the boy bolted, caught him three blocks from the school and seized from his hand an eyedropper and other drug paraphernalia which the boy had taken out of the same pocket. The court held that, acting in loco *802 parentis, he was exercising the supervision called for by the particular facts of that situation.
Our complainant was employed by the Board of Education, a governmental agency, in a position involving law enforcement and security. The prosecution argues that he too stood in loco parentis to the students entrusted to his care and therefore had the “long-honored obligation” to protect them while in his charge (People v. Jackson, supra, p. 910). The prosecution cites People v. Overton (20 N Y 2d 360, 363), which approved the principal’s inspection of a student locker for the discovery of drugs and the duty of school authorities ‘ ‘ to investigate any charge ■that a student is using or possessing narcotics and to take appropriate steps, if the charge is substantiated.” But there was no ■such charge in the case at issue. There is nothing in the record to indicate that anyone even .suspected, when the defendant was stopped in the school corridór, that he possessed or used drugs.
The mere fact that the defendant was wearing a coat that answered the description of the wrongdoer’s outer garment, such as any other number of students may have been wearing at the time, did not deprive him of his right to security and privacy against arbitrary governmental invasion. That being the case, the question as to whether the complainant was acting in loco parentis, or whether that status is reserved for a member of the school’s professional teaching staff, is of no consequence whatsoever here.
The complainant is subject to the same discipline, in observing the defendant’s constitutional rights, as though he did have the official status of peace or police officer. He was acting as an agent of the city government elóaked with police powers and safeguarding a municipal facility. I would not go so far as to deny him the right to stop the student and invite him to a suitable location for inquiry, once the investigation of the crime became his responsibility. But, as was stated in Tinker v. Des Moines School Dist. (393 U. S. 503, 506), students cannot be expected to shed their basic constitutional rights at the schoolhouse gate.
I do not mean to say that submission to authority is always in violation of a suspect’s constitutional rights. If, for example, the complainant had observed a gun or glassine envelope in the defendant’s possession, he would have had every right to request him to hand it over, or to take it away from him if he refused. As my learned colleague Judge Jtjlius A. Hellenbband observed in People v. Riddley (N. Y. L. J., Jan. 27, 1972, p. 16, col. 1): “ If a police officer pursues a suspect and a gun falls *803 out of his pocket while the suspect is on the run, it matters little whether the gun was abandoned, thrown away or accidentally dropped, so far as seizure is concerned.” But it was not a gun or a glassine envelope or a blackjack or bludgeon which the complainant saw protruding from the defendant’s pocket. It was a brown envelope. The special officer, acting on the skimpiest of hunches, requested the student to act against his own interest. The student, in the face of uniformed authority, acceded to the request. The complainant, notwithstanding his professed experience in observing student habits in the packaging of marijuana in this manner, could not have known what he would find in that envelope. This, in fact, was the subject of discussion and decision in the case of People v. Corrado (22 N Y 2d 308, 313) which involved seizure of opaque manila envelopes containing marijuana. Those envelopes, said the court, “ could have contained any number of noncontraband items * * *
in sharp contrast to the translucent glassine envelope which has come to be accepted as the telltale sign of heroin.” The court held that “ The testimony concerning the use of these common envelopes for marijuana does not raise the level of inference from suspicion to probable cause.”
This case involved neither probable cause for a lawful arrest nor consent nor abandonment nor exigent circumstances. The seizure of the contraband was clearly unlawful. The motion to suppress the evidence is therefore granted.