■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent. v. JULIO V. CALDER, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Richmond County, rendered July 20, 1973, convicting him of criminal possession of stolen property in the first degree, upon a jury verdict, and sentencing him to an indeterminate prison term not to exceed four years, to be served consecutively to another sentence then being served by him. The appeal also brings up for review an order of the same court, entered November 28, 1972, denying defendant's motion to suppress physical evidence, after a hearing. Judgment and order reversed, on the law and the facts, motion to suppress evidence granted and indictment dismissed. From the facts adduced at the hearing on the motion to suppress evidence, it appears that at approxi-mately 9:55 P.M. one evening a Detective Quilty, together with his partner, pro-ceeded to an address in a residential area of Richmond County in response to a radio communication from police headquarters indicating a "possible unloading of a hijacked truck of fireworks." The source of the information behind the communication was not known. Upon arriving at the address given, some two or three minutes later, Quilty observed a truck (a 1971 International Van) parked rear end in the driveway, approximately six feet from an open garage. A car was also in the driveway and the truck was parked behind the car. Quilty proceeded to investigate, while his partner covered the front of the premises. Quilty observed many different shaped cartons in the open garage. He shone his flashlight into the van and observed more cartons, similar to the ones in the garage. He noticed defendant standing on a porch, about 25 feet away. He called him over and identified himself as a police officer.

Defendant was asked his name, what he was doing there and about the truck and cartons. He gave his name and said he was visiting his girlfriend. He did not know about or give satisfactory answers concerning the truck or cartons. Quilty placed him under arrest and then seached his person, finding, *inter alia*, keys, one of which fit a lock on the truck. More than an hour later, Quilty conducted an investigation and ascertained that the merchandise in the cartons (stereo equipment and sewing machines) was, in fact, part of a shipment of goods which had been hijacked sometime earlier. The truck, however, was properly registered and had not been reported stolen. The motion to suppress was denied. Where a defendant challenges the admissibility of physical evidence or moves to suppress it, he bears the ultimate burden of proving that the evidence should not be used against him (*People* v. *Berrios*, 28 N Y 2d 361). The burden of going forward to establish the legality of the police conduct in the first instance, however, remains with the People (*People* v. *Whitehurst*, 25 N Y 2d 389; *People* v. *Malinsky*, 15 N Y 2d 86, 91, n. 2). In order to make out a prima facie case at a suppression hearing, the People must come forward with some evidence to show probable cause for the arrest to which the search was an incident (see *People* v. *Baldwin*, 25 N Y 2d 66, 70-71). Probable cause has been described as "the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers" (*People* v. *Tolentino*, 40 A D 2d 596). Clearly, however, a search will not be justified if based merely on suspicious or equivocal behavior alone (*People* v. *Munoz*, 40 A D 2d 337). We are of the opinion that there was no probable cause for defendant's arrest and, therefore, that the subsequent warrantless search was invalid and that any property seized as a result thereof should have been suppressed. Despite the experience of the arresting officer herein, the facts do not constitute more than mere suspicion and surmise of illegal activity. There was nothing to indicate that a crime had taken place or was occurring. The subsequent discovery that the merchandise was, in fact, stolen goods does not help in the instant situation. The successful results of a warrantless search cannot serve to "vitiate any unlawfulness in the underlying arrest" (*People* v. *Martin*, 32 N Y 2d 123, 124; *People* v. *Malinsky*, 15 N Y 2d 86, *supra*; *People* v. *O'Neill*, 11 N Y 2d 148). A search is "good or bad when it starts and does not change character from its success" (*United States* v. *Di Re*, 332 U. S. 581, 595). The motion to suppress should, therefore, have been granted. Hopkins, Acting P. J., Martuscello, Latham, Christ and Brennan, JJ., concur.