THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH JOHN BUTLER, Appellant.

Second Department, May 13, 1974.

*James J. McDonough* (*Matthew Muraskin* and *Steven Shapiro* of counsel), for appellant.

*William Cahn, District Attorney* (*Kenneth J. Weinstein* of counsel), for respondent.

MUNDER, J. This appeal is from a judgment of the County Court, Nassau County, convicting the defendant of burglary in the third degree, upon a jury verdict, and sentencing him to an indeterminate term of not more than five years.

The principal question presented concerns the propriety of the application of the rule enunciated over 100 years ago in *Knickerbocker* v. *People* (43 N. Y. 177 [1870]) which permits an inference of guilt to be drawn from the recent and unexplained possession of stolen property. The defendant additionally argues that there was an unlawful search of his automobile and, consequently, that the evidence garnered thereby should have been suppressed.

The judgment should be affirmed.

The defendant was stopped for speeding on April 3, 1972 at approximately 11:00 P.M. near Hauppauge in Suffolk County. Upon examination, it appeared to the police officer that the

license proffered by the defendant was forged. This was confirmed by a radio check and the defendant was forthwith placed under arrest for possessing a forged driver's license. The officer had noticed that the vehicle was very low to the ground and closer inspection after the arrest disclosed several large tool boxes on the rear seat. After receiving the *Miranda* warnings, the defendant told the officer, first, that he did not know to whom the tools belonged, and then, that he thought they belonged to an unidentified passenger whom the officer had seen fleeing from the vehicle after it stopped. Taken to police headquarters, the defendant was again questioned by police and his vehicle was impounded. The Suffolk County Police regulations required an inventory of the contents of the impounded vehicle. Until this point, the police were unaware of any burglary.

At the police station, it took several police officers approximately two hours to empty the vehicle of its contents and to prepare an inventory. They removed seven large tool boxes from the rear seat and a battery charger and a wheel balancer from the trunk. The tool boxes were stacked to within eight inches of the roof and obscured a driver's view through the rear window. Three of the tool boxes weighed about 250 pounds each, one about 150 pounds and two others about 50 pounds each. The police found a name, address and telephone number in one of the tool boxes. Subsequent inquiry disclosed that the person whose name was in the box was its owner; that he worked at Holy Rood Cemetery at Westbury in Nassau County; that he had left the tool box in a tool shed at the cemetery at 5:30 that afternoon; and that sometime later the cemetery gate was forced open and the tool shed burglarized and seven tool boxes, a battery charger and a wheel balancer were taken from the shed. These were the articles found in the defendant's vehicle. The defendant did not deny being in possession of stolen property but did deny that he was the burglar.

The defendant told the police at the police station, after again receiving the *Miranda* warnings, that he had been in Westbury earlier in the evening, had stopped at a diner for coffee and there met a man who offered him money to transport both him and the tools to an undisclosed place in Suffolk County. The defendant at first stated he did not know the man's name, but later remembered that his name was Callahan and that he resided in Nassau County. In one version, the defendant told the police that this man was an old friend whom he had known in prior years when he resided in the Westbury area. The

defendant also told the police that he had agreed to transport the man and the tools to Suffolk County, that the two of them transferred the tools from the man's vehicle to his own and that they thereupon left the man's allegedly disabled vehicle in the diner's parking lot. The defendant told one officer that he knew that the tools were " hot ".

Police investigation failed to uncover either a man named Callahan residing in the Westbury area who owned an automobile which fit the description of that given by the defendant or the automobile itself parked where the defendant stated he had last seen it. The man seen leaving the scene of the defendant's arrest, despite an immediate police search, was not found.

At the trial, after the prosecutor explained in his opening statement that the foregoing evidence would be presented on the People's case and what the People's theory was, defense counsel moved to dismiss the indictment on the ground that the People had failed to state a prima facie case. The trial court denied the application on the strength of *Knickerbocker* v. *People* (43 N. Y. 177, *supra*). The case was tried and the jury found the defendant guilty of burglary in the third degree.

In *Knickerbocker* (*supra*), the Court of Appeals stated and applied the principle that when a party is found in exclusive possession of the fruits of a theft, recently after its commission, and his possession is either falsely explained or unexplained, an inference can be drawn of his guilt of the crime committed. The principle was thereafter honed somewhat in *People* v. *Galbo* (218 N. Y. 283, 290–291) when Judge CARDOZO said:

" We do not say that it may not sometimes, if not explained or rebutted, be sufficient by itself. We must look to all the circumstances.

" Only half of the problem, however, has been solved when guilty possession fixes the identity of the offender. There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods? * * *

. " The problem is a hard one. To solve it we must steadily bear in mind that the inference of guilt to be drawn from possession is never one of law. * * * Other facts may neutralize it, or repel it, or render it so remote or tenuous or uncertain that in a given case we should reject it."

Basing his argument in part upon Judge CARDOZO's caveat, the defendant has directed this court's attention to two recent First Department decisions involving convictions based in part

upon the *Knickerbocker* inference. In *People* v. *Smith* (39 A D 2d 855), the defendant was apprehended while descending a stairway from the roof of an apartment building in which an apartment had been burglarized. He had in his possession some of the fruits of that crime, but denied any part in the burglary. He told the police he had found the stolen property on the roof. The defendant was visiting a tenant of the building and was lawfully on the premises. The First Department reviewed both *Knickerbocker* and *Galbo* (*supra*) and concluded that the evidence was insufficient to sustain the conviction for burglary. The court stated (pp. 855–856): " The evidence is insufficient to establish that the defendant ever entered or at any time remained unlawfully in the burglarized premises * * * . There was no evidence that the defendant was in the vicinity of the third floor burglarized apartment * * * nor was there proof that defendant was unlawfully on the stairs where he was first seen and apprehended. * * * Where, as here, an alleged conviction rests on circumstantial evidence, ' The evidence must be such as to exclude, to a moral certainty, every hypothesis but that of [defendant's] guilt of the offense imputed to him ' (*People* v. *Woltering,* 275 N. Y. 51, 61). Here, the evidence was not sufficient to duly establish the inference, to the exclusion of any other reasonable explanation under the evidence, that the defendant had actually entered or had been in the burglarized apartment or had participated in the entry thereof."

In the second case, *People* v. *Garcia* (41 A D 2d 821), the court was apparently presented with circumstances similar to those involved in *Smith* (39 A D 2d 855, *supra*), since the defendant's conviction for burglary in the third degree was reversed, without a statement of facts, but with a reference to *Smith.*

The defendant argues that *Smith* and *Garcia* are similar to his own case in that in all three, a burglary was proven, stolen goods were found in the defendant's possession, the defendant proffered an explanation that implicated a third party, the third party was seen fleeing by the police and never apprehended, and no evidence was adduced placing the defendant in the immediate vicinity of the crime. Considering the foregoing, the defendant contends that the trial court should have dismissed the case at the close of the prosecutor's opening statement and that the court compounded its error by including in its charge a statement that they were free to draw an inference of guilt from the defendant's recent and exclusive

possession of the fruits of the burglary if they believed that he had failed to adequately explain his possession thereof. This contention is without merit.

As the People have pointed out, the Court of Appeals' decision in *People* v. *Wachowicz* (22 N Y 2d 369) is instructive and supports affirmance. Judge BERGAN there said (p. 372): " The rule governing the sufficiency of circumstantial evidence as this court has restated it many times is: (a) that the hypothesis of guilt should ' flow naturally from the facts proved, and be consistent with them all '; (b) the facts proved must all be consistent with guilt and inconsistent with innocence and exclude ' to a moral certainty ' every hypothesis but guilt

\* \* \*

" But with these precautions, essentially an insistence on reliability of the inferences to be drawn from established facts, this court has always accepted circumstantial evidence as a sound basis for adjudication in criminal as well as in civil cases.

" In the end, it is a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts."

In this same vein, Judge SCILEPPI in *People* v. *Colon* (28 N Y 2d 1, 13), in considering the applicability of the *Knickerbocker* inference, stated: " Indeed, the standard is necessarily a fluid one and we must consider all the circumstances of a given case before finally opting for one result or another."

The cases cited by the defendant, while they serve to highlight the difficulties of the use of the *Knickerbocker* rule and the circumspection with which it should be employed, merely stand as examples of situations where the inference of guilt of the crimes charged was unsupported by the surrounding circumstances. An examination of them shows, as Judge CARDOZO pointed out in *People* v. *Galbo* (218 N. Y. 283, *supra*), that the inference created by the accused's recent, unexplained possession of the fruits of a crime may be rebutted by the surrounding circumstances. Where it appears conclusively that the proved facts will lend no support to the inference of guilt, or than an injustice will result by permitting the jury to consider it, the indictment should be dismissed, unless it contains an additional count of receiving stolen goods, in which event only that count should be submitted to the jury and the *Knickerbocker* rule should not be charged. But when the established facts present a reasonable basis for the applica-

tion of the *Knickerbocker* inference, the rule not only may but should be charged.

At bar, the facts adduced provided a reliable basis for its application. They fairly compel the conclusion that the defendant was one of the thieves and that he was properly found guilty. The weight of the items taken from the cemetery tool shed and found in the defendant's possession indicates that more than one man took part in the crime. It took a number of detectives several hours to remove all of the tools and boxes from the defendant's vehicle. The burglary occurred in Nassau County sometime after 5:30 P.M. and the defendant was apprehended with the tools in his possession around 11:00 P.M. several miles from the scene of the theft. He acknowledged his presence in the vicinity of the cemetery earlier that evening. It is incredible that a single burglar broke into the cemetery, loaded his car with the loot that was found, then met the defendant and transferred the stolen property into the defendant's vehicle. It is more reasonable to believe that there was only one loading of the tools, directly into the defendant's vehicle, and that the defendant was in fact one of the burglars. Compelling, too, is the fact that the automobile was loaded literally to its top, indicating that it was the available space that determined the amount of property which would be stolen.

There are additional facts. The bolt cutter found in the defendant's possession was scientifically linked to the cutting of the cemetery gate lock. It was found behind the driver's seat, covered over with the stolen property, obviously placed there prior to placement of the tool boxes. If the story of the transfer was true, it is unlikely that the bolt cutter would have been beneath the loot. There is also the defendant's admission to one police officer that he knew the property in his automobile was "hot" and the fact that his stories to the several police officers were varied and inconsistent.

As for the defendant's contention of illegal seizure, it is well settled that an automobile which is driven by an accused upon his arrest may be seized by the police and an inventory made of its contents (see *People* v. *Robinson*, 36 A D 2d 375). If the inventory search uncovers contraband in the accused's possession, it may properly be used as evidence against him, provided the police were actually engaged in preparing an inventory and not instead looking to uncover contraband. As Mr. Justice SHAPIRO said in speaking for the majority of this court in *People* v. *Robinson* (36 A D 2d 375, 377, *supra*): "The 'search' of a vehicle *which has been lawfully impounded*

for the purpose of inventorying its contents is calculated to safeguard them for the benefit of their rightful owner as well as to protect the police against possible dishonest claims of misappropriation of the vehicle's contents; and there would seem to be no valid reason for extending the constitutional limitation against ' unreasonable ' searches to a fact pattern where the ' search ' is not made in defiance of constitutional standards to obtain incriminating evidence but rather in furtherance of a wholly reasonable and legitimate purpose " (emphasis in original).

There is no question that the defendant was properly arrested and that probable cause existed for his arrest. At the time of his arrest, the Suffolk County police were unaware of the burglary in Nassau County and their subsequent search of the vehicle was properly to inventory its contents. The search was made pursuant to standard police procedure and the later discovery that the car's contents consisted of stolen property does not invalidate the use of the property as evidence against the defendant. There was no error in the denial of the motion to suppress such evidence.

We have considered the other errors urged by the defendant and find them to be without merit.

HOPKINS, Acting P. J., SHAPIRO, CHRIST and BRENNAN, JJ., concur.

Judgment of the County Court, Nassau County, rendered June 1, 1973, affirmed.