Louis Wallach J.
Defendant seeks to suppress a package containing marijuana seized from him at Kennedy Airport.
A hearing was held on December 17, 1974. The following *13 constitutes the findings of fact and conclusions of law pursuant to CPL 710.60.
The first witness, Special Agent John Huber of the United States Department of Justice, testified that on September 20, 1974 at approximately 7:00 p.m. he received a telephone call from Tucson, Arizona. The caller identified himself as Detective Charles Schwarz of the Tucson Police Department, stating that a package, which he believed to contain marijuana, would be flown into Kennedy Airport. This contraband was allegedly arriving on an American Airlines flight — No. 118 — due to arrive at approximately 8:15 p.m. that evening at Kennedy Airport. The marijuana, approximately 16 pounds in weight, would be shipped in a box wrapped in white masking or adhesive tape and would be consigned to one T. R. Blackman, Newburgh, New York.
The out-of-State detective gave no further details and did not advise Agent Huber as to how he had obtained his information or the source thereof. No mention was made of the sender; nor was a description given of the consignee. No verification was made of the Arizona message either by a return telephone call or written communication.
Special Agent Huber further testified that, although he was assigned as a Federal agent to Kennedy Airport, he did not make the arrest himself due to other investigations. Instead, he contacted Detective Carl Brown of the Port Authority police and advised him of the Arizona telephone call. The Federal agent further testified that he believed the information which Detective Schwarz had furnished him was reliable due to the fact that they had had prior telephone conversations — some four or five in number — which had furnished information that led to arrests. In conclusion, Special Agent Huber stated that he had nothing further to do with this particular investigation.
Detective Carl Brown of the Port Authority police testified next. He verified the fact that he had received a telephone message from Special Agent Huber at approximately 7:30 p.m. on the date in question. He stated that he was advised that there would be a shipment of marijuana aboard a specific American Airlines flight due to land at Kennedy at approximately 8:15 p.m. and that this shipment would be addressed to one T. R. Blackman.
The Port Authority officer immediately contacted the American Airlines and verified that such a flight was due. He then *14 went to the cargo building and spoke to the duty officer, Mr. Flanagan, who acknowledged that they had such a package and showed it to him. The box, wrapped in tape, bore the legend: T. R. Blackman, Newburgh, New York. Detective Brown then requested Mr. Flanagan to open it and the duty officer did so. Contained within the package were plastic bags of vegetable matter, which appeared to be marijuana. The box was then resealed and put back into the cargo area. At approximately 10:15 p.m. a white male, identifying himself as Thomas R. Blackman, asked for the package. He received it, signed the way-bill, and left the building, apparently heading for a parked vehicle. At that point, the Port Authority officer walked up to Mr. Blackman and identified himself as an officer. He then placed the defendant under arrest and confiscated the marijuana.
At issue here is the legality of the seizure. It is clear that in the absence of a warrant, such a search and ensuing seizure may only be justified as an incident of a lawful arrest (People v Loria, 10 NY2d 368). To have a valid arrest in this case, Detective Brown must have had reasonable cause to believe that the defendant was committing or had committed a crime (CPL 140.10). "Reasonable cause” for arrest without a warrant has been equated with "probable cause” as that term is used in the Fourth Amendment and means such reasonably trustworthy information as would warrant a man of reasonable caution to believe that a person arrested was guilty of committing a crime (People v Lombardi, 18 AD2d 177, affd 13 NY2d 1014). Thus, the question of probable cause arises.
In considering this question it must be observed that while the arrest in this case was made solely by Detective Brown, the underlying investigation was the product of a joint city and Federal investigation. This joint investigation in and of itself does not lessen the need for probable cause since so long as proper legal standards of arrest and search are observed, it is immaterial that they were the product of a joint operation between State and Federal agents so long as probable cause may be established by those participating in arrest (People v Coffey, 36 Misc 2d 67, 70, affd 18 AD2d 794, affd. 12 NY2d 443). Nor would it be necessary for Detective Brown to know himself or to be in possession of information which establishes such probable cause provided "that he acts upon the direction of or as a result of communication with superior or brother officer or another police department” which was in possession *15 of information sufficient to constitute probable cause to make the arrest (People v Horowitz, 21 NY2d 55). Thus, the basic issue before this court narrows down to determination of whether any of the three governmental agencies in this case were in possession of information sufficient to constitute probable cause to arrest the defendant.
Analyzing, then, the role of each of the government agents in this case, it is clear that the bulk of information leading to the seizure of the marijuana came from Detective Carl Schwarz of the Tucson police force. It was his official communication which furnished the time, date and place of the incoming contraband. An official communication, in and of itself, however, does not constitute probable cause (cf. Whitely v Warden, 401 US 560, 568). Logic would indicate that the value of such communication depends more upon the accuracy of the information than the means of conveying it. This would hold true regardless of the nature of the official communication, be it telephonic or radio alarm. "The exactness of the description of a person or his vehicle and the surrounding facts contained in a radio alarm determine the probable cause for the search”. (People v Nieves, 72 Misc 2d 916, 919.) In considering the information given by Detective Schwarz, the record is barren as to the source of his facts. The Tucson detective never indicated whether he was dealing with informers, or had knowledge based upon his own personal observations or leads secured by other members of his police organization. His knowledge then might have been the result of solid police work, an informer’s tip or a malicious hoax. Without some method of testing validity, the official communication constitutes hearsay information, and while it is certainly grounds for suspicion, it cannot rise to the level of probable cause (cf. People v Calder, 44 AD2d 683).
The next link in the chain of investigation was supplied by Special Agent Huber, who received Detective Schwarz’ telephone information. Due possibly to the fact that the plane was expected to arrive within an hour, the Federal agent made no independent verification of the information conveyed to him. He did not question the source of his information or inquire as to any background matter. Further, at the conclusion of their conversation, the Special Agent did not make any return calls to the out-of-State agency or take any notes. Thus, it would seem that the Special Agent’s role in this investigation was limited to receiving the information and verifying the fact *16 that Detective Schwarz was a police agent who had furnished valuable information in the past. While this establishes the reliability of the informant, it does not contribute anything to determining the credibility or value of the information itself.
The final link in this common investigation came in the person of Detective Carl Brown. He verified the existence of the package and that it was addressed to the defendant. He next ordered the cargo supervisor to open the package and found that it contained vegetable matter which, from his experience, looked like marijuana. However, it must be pointed out that this discovery does not constitute an independent search by the airline authorities, since the package was opened at the request of the law enforcement officer. Under such circumstances, the cargo official did not act in his capacity of private citizen (Burdeau v McDowell, 256 US 465) but, rather, as an agent of the government (People v Bowers, 72 Misc 2d 800). The record further indicates that the Port Authority detective made no independent contribution of his own, such as noticing the "telltale odor associated * * * with marijuana” (People v Reisman, 29 NY2d 278, 284) or observe particles (People v Sanders, 52 Misc 2d 989) or any other suspicious characteristics which might be associated with this particular drug. When defendant picked up the box, the arrest was effectuated without further questioning or investigation on the arresting officer’s part. In sum, Detective Brown observed nothing suspicious or unusual and arrested the defendant mainly on the information supplied by his brother officer in the Federal branch.
Weighing all the evidence before it, this court can only conclude that none of the three agents, either individually or collectively, established the probable cause necessary to arrest the defendant. The facts seem to indicate only that an out-of-State police officer had a valid tip that contraband was going to be shipped on a particular flight to a named person in New York City. This information was passed along to a Federal agent who, in turn, relayed it to a Port Authority officer. The arrest that followed was based almost entirely on this telephone call, without any verification by the Federal agent or personal observation of suspicious behavior by the arresting officer. The source and background of this information are still totally unknown and, consequently, cannot be tested at this hearing. Simply put an official communication, unsupported by background information, does not constitute probable cause *17 unless there is additional verification of some form which would tend to corroborate the initial facts. Since additional verification is lacking in this case, this court must conclude that the People have failed to show probable cause for the arrest.
It might also be noted that, while the failure of the combined governmental agencies in this case can reasonably be attributed to the pressures of time, some simple administrative guidelines might alleviate similar problems in the future, particularly in dealing with airport cargo. Thus, out-of-State official communications could and should be followed up by some form of documentary evidence indicating the nature of the information and the source thereof. The receiving officials can likewise make note of the initial contact and substantiate this by written records and follow-up communication. Finally, the arresting officer should be made aware of the previous investigations and be in a position to benefit by personal observations.
For the above reasons, defendant’s application to suppress is granted.
Order entered accordingly.
The Clerk of the court is directed to mail a copy of this decision and the order to the defendant at his place of incarceration.