THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK L. MARTIN, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HOWARD B. GOLDMAN, Appellant.

Fourth Department, May 30, 1975

*Joel L. Daniels* for Frank L. Martin, appellant.

*F. Bernard Hamsher (Joel L. Daniels* of counsel), for Howard B. Goldman, appellant.

*Edward C. Cosgrove, District Attorney (John J. DeFranks* of counsel), for respondent.

WITMER, J. Defendants, Howard B. Goldman and Frank L. Martin, appeal from judgments convicting them upon their pleas of guilty of attempted criminal possession of a dangerous drug in the third degree in satisfaction of indictments against them of criminal possession of a dangerous drug in the third degree, and sentencing each of them to probation for five years. These appeals are based upon their claims that the court erred in denying their motions for suppression of marijuana found in an automobile in which they had been riding.

The evidence on the suppression hearing is briefly summarized as follows: Around the first of May, 1973 Detective McGillion of the Police Department of the Town of Tonawanda received orally from an informer unknown to him information that Mark Duscher was in California and was bringing home to Tonawanda a large quantity of marijuana for the purpose of selling it. Although the detective did not know the informer and had never received prior information from him leading to an arrest or conviction, he did know Mark Duscher, who was the son of a policeman with the Police Department of the Town of Tonawanda, and the detective's superior, Captain McDonough, knew that Mark had been involved with soft drugs. On June 10, 1973 the informant told McGillion that Mark Duscher would arrive that evening between 8:00 and 8:30 o'clock in an old gray car with a large

quantity of marijuana and that a transaction in marijuana would occur at the rear of Park Edge Plaza.

Although they had no knowledge of the authenticity of the informer's tip, the police undertook a surveillance of the area, some on foot and others in unmarked police cars. The officers in one patrol car saw an old gray car containing three young men in the parking lot of Park Edge Plaza drive alongside another car which was parked, and saw the occupants of the two cars converse with each other. The conduct of these occupants did not appear suspicious to the officers. The officers drove by the gray car and circled around. When they again approached it the gray car sped away. The police pursued it with siren sounding, and overtook it at a stop light where they forced it to the curb. There, Officer Korodi and Captain McDonough got out of their police car and ran to the gray car. Korodi approached on the driver's side shouting, "Police", and showing his identification to the driver, the defendant Goldman. The driver's window was closed, but Goldman looked at him. Captain McDonough opened the right hand door of the car and leaned in. At that moment the car sped away dragging the Captain across the intersection and knocking Officer Korodi out of the way. Both officers recognized Mark Duscher in the car, sitting next to the driver, and defendant Martin was on the rear seat.

The police renewed the pursuit; the gray car came to a stop at 660 Loretta Street and the three young men fled from it on foot. Captain McDonough chased them to a fence, but they climbed it and eluded him. An officer made a physical inventory of the gray car at the scene, checking the glove compartment and the interior. The car keys were not found. The car was towed to the police garage where it was impounded. The police learned that it belonged to defendant Goldman's father, and they went to the Goldman residence but found no one home.

Throughout this period the police had seen no evidence of marijuana nor of any drug transaction; and no one had been charged with possession of marijuana or had been arrested. It was a police department rule to search every impounded vehicle and inventory its contents for the protection of the owner and of the department. Although the vehicle was safely held in the police garage and the police had ample time to seek a warrant to search it, they forced the trunk open with a crowbar without obtaining a warrant; and they found therein

14 blocks of marijuana, weighing 414 ounces. Soon thereafter the defendants were apprehended. Defendant Goldman was originally charged with reckless endangerment of the life of a police officer, because of the manner in which he operated this gray automobile. Each defendant was later charged with criminal possession of a dangerous drug in the third degree.

The question presented on this appeal is whether the police had probable cause to search the seized automobile. We begin by recognizing that the search cannot be sustained as incidental to the lawful arrest of the defendants, for the search occurred before their apprehension (see *Chimel v California,* 395 US 752; *People v Spinelli,* 35 NY2d 77; cf. *People v Fustanio,* 35 NY2d 196; *People v Perel,* 34 NY2d 462, 466–467). The validity of the search, therefore, depends upon whether the police had reasonable cause to believe that the vehicle contained contraband, that is, marijuana, at the time they searched it *(Carroll v United States,* 267 US 132, 149; *People v Brown,* 28 NY2d 282). In *Chambers v Maroney* (399 US 42, 51) the court said: "In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in *exigent circumstances* will the judgment of the police as to probable cause serve as a sufficient authorization for a search" (emphasis added). Similarly, that court had previously stated the rule, that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions" *(Katz v United States,* 389 US 347, 357). The burden is on those seeking an exception to show that the exigencies of the situation made that course imperative *(Coolidge v New Hampshire,* 403 US 443) for only, as an exception to the rule, is it held that " 'exigent circumstances' justify the warrantless search of 'an automobile *stopped on the highway',* where there is probable cause, because the car is 'movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained' " *(ibid.,* p 460).

The information which Officer McDonough received from the informant did not create probable cause for police search

of the gray automobile. Before such hearsay information may create probable cause there must be shown "(1) whether the informant is in fact reliable, and (2) whether the underlying circumstances as to how the informant came by his information demonstrate sufficient probability of credibility to allow the search of the premises or person in question" *(People v Hendricks,* 25 NY2d 129, 133; see, also, *Spinelli v United States,* 393 US 410; *Aguilar v Texas,* 378 US 108). Neither of such tests was satisfied here. First, the informant was unknown to the officer and, so far as the officer knew, had never furnished information leading to the arrest or conviction of anyone (cf. *People v Montague,* 19 NY2d 121; *People v Rogers,* 15 NY2d 422); and there was no independent investigation of the informant's statement (see *People v Cerrato,* 24 NY2d 1; *People v Malinsky,* 15 NY2d 86). Secondly, there is no showing of the source and reliability of the informer's statement, to give reason to believe that it was more than rumor or suspicion or whether it was falsely made with malice (see *Spinelli v United States, supra,* p 416; *People v Munger,* 24 NY2d 445, 452; cf. *Draper v United States,* 358 US 307, 312–313).

The People quite properly concede, therefore, that probable cause to search the gray car did not exist prior to the time that it sped away from them. At that time all that the police had was an unverified tip that the car would arrive carrying marijuana. As noted, the tip could have been rank speculation or a malicious statement, and did not afford the police probable cause to search the car (see *People v Corrado,* 22 NY2d 308).

The People contend that the fact of the flight of the vehicle, the fact that in the course of pursuing it the police learned that Mark Duscher was in the vehicle as the informer had advised, and the fact of the flight of the three men from the vehicle, gave the police reasonable grounds to believe that the vehicle contained marijuana. These facts, however, are not enough to satisfy both elements required for an informer's tip to give probable cause to search. While flight "may be considered on a trial as some evidence of a consciousness of some undifferentiated guilt", it does not provide a "basis for a belief that contraband is in the trunk of the vehicle of that flight" *(People v Kreichman,* 45 AD2d 697). The acts of defendants did not add to the suspicions of the police unequivocal information sufficient to give them reasonable grounds to believe that the automobile contained marijuana (see *People v Rus-*

*sell,* 34 NY2d 261, 264; *People v Munoz,* 33 NY2d 998; *People v Brown,* 32 NY2d 172, 174; *People v Brown,* 24 NY2d 421, 423 and *People v Calder,* 44 AD2d 683).

At best, in a situation of this sort, where the vehicle is safely impounded, the police should not take it upon themselves to be the judge of whether they have probable cause to search it. When doubt exists in this respect and there is no immediate threat of disappearance of suspected contraband, the police should follow lawful, conservative procedure and make application to a Judge for a warrant to search. In the event that the Judge is not satisfied that the information which the police have justifies issuance of the warrant, the police will then have an opportunity, through additional investigation or showing, to establish that they have reasonable grounds for search and seizure, and thus obtain the warrant to make a lawful search and avoid a search and seizure under conditions susceptible of attack as in this case. Here, the People have not demonstrated that before forcing open the trunk of the vehicle the police had probable cause to believe that it contained marijuana.

The search cannot be sustained by the police regulation for investigating the contents of impounded vehicles. In *People v Sullivan* (29 NY2d 69, 71) the court said: "It is manifest that in inspecting vehicles they take into their custody, in the absence of drivers, the police are not seeking evidence of crime but are pursuing precautions which any bailees of personal property would be expected to take as a matter of reasonable care for the benefit of the absent owner of the vehicle and as a safeguard against claims of loss or damage which could be alleged against the city" (see, also, *People v Butler,* 44 AD2d 423). The court added (p 75): "Where there is 'reasonable and proper justification' for impoundment of a vehicle, 'and where the search is not made as a general exploratory search for the purpose of finding evidence of crime but is made for the justifiable purpose of finding, listing, and securing from loss, *during the arrested person's detention,* property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed' " (emphasis added). The court concluded (p 77) by drawing a distinction between a search for the purpose of making an inventory for the protection of the owner of the property and the police, and one

made for the purpose of seizing the contents, presumably also made for the purpose of securing evidence to support arrest of' the owner.

Motivation for the inspection, therefore, is a significant factor in this inquiry. In this case the officers testified unequivocally that they opened the trunk of the vehicle to find out whether it contained marijuana. Under such circum-' stances "the existence or nonexistence of a police regulation cannot be used as a predicate for determining the issue of the reasonableness of an 'inventory search' of a vehicle" *(People v Robinson,* 36 AD2d 375, 377). Since the search was not made for the purpose of inventory and protection of the property or as an incident to an arrest and was not based upon probable cause, it was improper, and the contraband should have been suppressed.

The contention that since the vehicle was used in committing the crime of reckless endangerment, it was subject to search without a warrant has no merit *(People v Spinelli,* 35 NY2d 77). In *People v Brown* (28 NY2d 282, *supra),* relied upon by the People in this regard, the court (p 286) recognized the rule that "There must exist a reasonable belief that the search will produce the fruits, instrumentalities, contraband or evidence".

Finally, the search was not justified on the ground that the vehicle was abandoned, for there was no proof that the defendants intended to abandon the car because they ran from it *(People v Baldwin,* 25 NY2d 66, 70; *People v Anderson,* 24 NY2d 12).

Accordingly, the judgments should be reversed, the motions to suppress granted and the matters remitted to Supreme Court, Erie County, for further proceedings upon the indictments.

MARSH, P. J., CARDAMONE, MAHONEY and DEL VECCHIO, JJ., concur.

Judgments unanimously reversed on the law and facts, motions to suppress granted, and matters remitted to Supreme Court, Erie County, for further proceedings upon the indictments.