OPINION OF THE COURT
Dominic R. Massaro, J.
Indictment No. 4702/89 has been filed against the defendant, Juan Garcia, arising from a charge of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]). Mr. Garcia claims to be aggrieved by an unlawful search made without probable cause. He moves to suppress the seizure of a gun. The motion is denied.
It is well settled that where a defendant challenges the *511 admissibility of physical evidence, he bears the ultimate burden of proving that said evidence should not be used against him. The People have only the burden of going forward to show the legality of initial police conduct.
A pretrial suppression hearing was conducted before this court on February 6, 1990. A single witness, Police Officer Kevin Williams, was called by the People; his testimony was credible and believable.

Reasonableness of Police Conduct

On May 19, 1989, Police Officers Williams and Siciliano immediately made their way to the building known as 2239 Crestón Avenue. This in direct response to an anonymous telephone complaint of drug sales in the lobby thereof. It is uncontested that the location is a known "narcotics-prone building.” They approached said building on foot and in uniform. Upon reaching the entrance door, defendant was observed in the lobby, through a box window centered in said door, walking toward them. When he observed the officers, Mr. Garcia turned and fled. Entering the building, the officers followed defendant to the end of a first-floor hallway. They did not order him to "stop,” but next observed him on the first-floor landing in the act of discarding a gun through an open window into the alleyway below. The officers now gave chase up the stairwell, but lost sight of defendant. They then heard an unknown door slam on what they believed to be the fifth floor, and likewise unknowing as to which apartment Mr. Garcia may have entered, they retired from the building. A search of the alleyway behind the structure uncovered the weapon in question. Leaving the area, they "took one spin around the block” and, upon returning several minutes afterward, observed defendant exiting the address. Thereupon, they alighted from their radio patrol car and apprehended him.
The issue presented by the facts educed at the hearing is a close one: whether or not the anonymous tip provided a sufficient predicate to justify the ensuing police conduct. Considering the totality of the circumstances existent in this case, the court narrowly concludes in the affirmative.
Our Court of Appeals, in People v De Bour (40 NY2d 210 [1976]), delineated several levels of permissible intrusion in assessing the reasonableness of police conduct vis-á-vis a private citizen in a public place. The standard to be applied in such cases focuses on the initial encounter. De Bour instructs *512 us that "[b]efore the police may stop a person pursuant to the common-law right to inquire there must exist at that moment a founded suspicion that criminal activity is present * * *. To validate this stop * * * we must examine the knowledge possessed at that moment and any reasonable inferences” (People v De Bour, supra, at 215-216).
Founded suspicion, then, is sufficient to allow an officer to inquire, to seek out explanatory information; however, it is an insufficient predicate, standing alone, to support forcible restraint (see, People v De Bour, supra; People v Bruce, 78 AD2d 169 [1st Dept 1980]; People v Olsen, 93 AD2d 824 [2d Dept 1983]).

Less Demanding Standard

Here there is more than an anonymous tip. The complaint itself was not detailed, to be certain; but taking into account facts already known to the police respecting the specific location, a reasonable suspicion may properly arise that, indeed, criminal activity is afoot. Even unverified information, when it combines with reliable information independently available to the police, can establish a requisite quantum of suspicion authorizing an appropriate response. Founded suspicion presents the court with somewhat less of a demanding standard than that required to show probable cause — it can arise from information of lesser quality.
Illinois v Gates (462 US 213, reh denied 463 US 1237 [1983]) dealt with an anonymous tip. The court there abandoned the two-pronged rule set forth in Aguilar-Spinelli (see, Aguilar v Texas, 378 US 108 [1964]; Spinelli v United States, 393 US 410 [1969]) in favor of a "totality of the circumstances” approach in determining whether an informant’s tip establishes probable cause (cf., People v Griminger, 71 NY2d 635 [1988]; People v Johnson, 66 NY2d 398 [1985]). While the Gates court articulated that factors considered critical under the older test — the "veracity,” "reliability” and "basis of knowledge” of the informant — remain "highly relevant in determining the value of his report” (supra, at 230; see also, People v Rodriguez, 52 NY2d 483 [1981]; People v Brown, 40 NY2d 183 [1976]; People v Hanlon, 36 NY2d 549 [1975]; People v Martin, 48 AD2d 213 [4th Dept 1975]), it applied the totality of the circumstances approach taking into account facts corroborated by knowledge possessed through independent police work.
In Alabama v White (496 US —, 110 S Ct 2412, 110 L Ed 2d *513 301 [June 11, 1990]), such relevance was carried forward in the reasonable suspicion context "although allowance must be made in applying [it] for the lesser showing required to meet [this lower] standard” (496 US, at —, 110 S Ct, at 2415, 110 L Ed 2d, at 308; see also, Adams v Williams, 407 US 143 [1972]).

Intensity of the Circumstances

Conversely, a citizen enjoys "a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime. Though the police officer may endeavor to complete the interrogation, he may not pursue, absent probable cause to believe that the individual has committed, is committing, or is about to commit a crime, seize or search the individual or his possessions, even though he ran away” (People v Howard, 50 NY2d 583, 586 [1980]; see also, People v McFadden, 136 AD2d 934 [4th Dept 1988]).
While the police may endeavor to complete the interrogation, they may not, absent probable cause, pursue. (Cf., People v Leung, 68 NY2d 734 [1986] [where the police observed the defendant pass an envelope in an area known for drug activity]; People v Allen, 141 AD2d 405 [1st Dept 1988], affd on other grounds 73 NY2d 378 [1989] [where the police received a report and first observed the defendants running]; People v Hill, 127 AD2d 144 [1st Dept 1987] [where the police received a radio transmission and subsequent direction to the defendant]; Matter of Dione Jamel M., 149 AD2d 421 [2d Dept 1989] [where a police officer ran into a building upon hearing gunshots and the defendants ran upon seeing him]; People v Kosciusko, 149 AD2d 620 [2d Dept 1989] [where the police observed the defendant holding a plastic bag in an area known for drug activity]; People v Townsend, 144 AD2d 508 [2d Dept 1988] [where the police received a radio description and immediately arrived at the location and observed the defendant]; People v Thornton, 139 AD2d 787 [2d Dept 1988] [where the police were given a description and found the defendant near the scene].) "The absence of probable cause, however, is not dispositive of the outcome here since probable cause is not a necessary predicate for all contact between police and the citizenry * * *. It is settled that, under appropriate conditions, an officer may briefly detain and question a suspect in a public place on information not amounting to probable cause, for, until an actual arrest occurs, the Constitution demands only that the action of the police be justified at *514 its inception and reasonably related in scope and intensity to the circumstances surrounding the encounter * * *. Thus, in measuring the lawfulness of police conduct, we are called upon to strike a balance between the citizen’s inestimable * * * 'right to be let alone’ * * * and the degree to which the seizure is necessary to advance the public interest in the detection of crime and the apprehension of criminals * * *. And in weighing those interests the standard to be applied is that of reasonableness, the touchstone of the Fourth Amendment * * *. The reasonableness standard contemplates and permits a flexible set of escalating police responses, provided only that they remain reasonably related in scope and intensity to the information the officer initially has, and to the information he gathers as his encounter with the citizen unfolds * * *. The greater the specific and articulable indications of criminal activity, the greater may be the officer’s intrusion upon the citizen’s liberty. Thus, for example, where the officer entertains nothing more than a hunch or vague suspicion, virtually no interference with the citizen is permissible. Where, on the other hand, the officer possesses knowledge amounting to probable cause to believe that the individual has committed or is committing a crime, he may effect an arrest thereby intruding upon the individual’s liberty in the greatest permissible way” (People v Finlayson, 76 AD2d 670, 674-675 [2d Dept 1980]; citations omitted; emphasis added).

Conclusion

In the case under consideration (the police entry into the public areas of 2239 Crestón Avenue and the minimal intrusion of approaching any person[s] found therein for the purpose of inquiry not violative of the Fourth Amendment), upon the officers observing Mr. Garcia’s flight, the officers enjoyed a continuing authority to seek to inquire, but nothing more, as events unfolded, however, their further observation of defendant in the very act of discarding a handgun from his waistband — a calculated act evincing independent intent to rid himself of that property, to abandon it, not the result of any illegal police conduct (see, People v Leung, 68 NY2d 734 [1986], supra; People v Kosciusko, 149 AD2d 620 [2d Dept 1989], supra) — furnished probable cause to actively pursue and arrest him (see, CPL art 140). Based thereon, when they observed Mr. Garcia exiting the building only a short while later, said *515 probable cause was yet extant. With respect to the weapon, it was never seized from his person; rather, it was abandoned by him.
Under the attendant circumstances, defendant’s motion to suppress physical evidence is, in all respects, denied.