Chief Judge Fuld.
This case, still in the pleading stage, arose in connection with a highly popular television show which turned into a national scandal several years ago. According to the complaint, the plaintiff is a university professor who, in 1958, was induced to appear and participate as a contestant on a quiz show known as “21”. The program, which was broadcast weekly, was designed to pit experts in various fields of knowledge against one another for .substantial cash prizes and, at the *457 height of its popularity, was consistently viewed by millions of people. Although the plaintiff and the public were led to believe that the quiz was conducted honestly and in good faith, without any coaching or assistance to contestants, the program was rigged, the results actually prearranged: certain contestants, other than the plaintiff, were told beforehand the questions which would be asked and the correct answers which should be given. In this manner, it was possible for the producers to control the “ winners ” and “ losers ” and to bring about tie games for the purpose of increasing the suspense for the television viewing audience. These machinations became common knowledge in the Fall of 1959, following investigations by several public bodies, including grand juries and a Special Subcommittee of the House of Representatives.
It is alleged that the exposure of the hoax caused the public to believe that all of the contestants were privy to the fraud and, as a consequence, the plaintiff claims in his first cause of action — which is the only one before us[1] — that he “ has been brought into public scorn, contempt, and obloquy; has been held up as an object of scorn, shame, and contempt * * *; and
his professional standing and reputation had been seriously and pecuniarily damaged.” In addition to such general damages, of $250,000, the plaintiff asks for special damages of $7,500, arising from the denial by each of two separate foundations of his applications, originally made in October, 1959, for a fellowship in that amount. Upon the basis of his background, he says, he “ had reason to believe ” that one of those applications would have been granted to him were it not for the “ publicity which cast doubt upon the honesty of all those who have participated in the ‘ 21 ’ quiz show ” and that, “ On information and belief,” it was because of this that “ the foundations were led to their rejection of his applications ”.
Following service of the complaint, the defendants moved to dismiss the first cause of action on the grounds that it was (1) legally insufficient and (2) barred by the Statute of Limita *458 tions. The court at Special Term, though sustaining the sufficiency of the cause of action, concluded that, since it sounded in “defamation”, it was barred by the one-year Statute of Limitations prescribed for libel and slander (Civ. Prac. Act, § 51, subd. 3 [now CPLR 215]). On appeal, a divided Appellate Division reversed the order of dismissal and reinstated the first cause of action, holding that it did not allege defamation, but, rather, an ‘ ‘ intentional wrong ’ ’ for which the applicable Statute of Limitations was six years (Civ. Prac. Act, § 48, subd. 3 [now CPLIÍ 214, subd. 5]).
We do not find it necessary to decide whether the defendants’ conduct was actionable. Even if we were to assume that the plaintiff could have stated a valid cause of action against them, the complaint before us would, nevertheless, have to be dismissed. In the first place, it fails to allege special damages with sufficient particularity, the plaintiff’s speculations concerning the reasons for his failure to obtain a fellowship being simply not adequate for that purpose. (Cf. Rager v. McCloskey, 305 N. Y. 75, 81; Nichols v. Item Publishers, 309 N. Y. 596, 602.) While it might be possible to cure this deficiency by amendment of the complaint (see Gurtler v. Union Parts Mfg. Co., 1 N Y 2d 5, 8; Kelly v. Overseas Investors, 18 N Y 2d 622, 624), another and insuperable obstacle to maintenance of the action is presented by the bar of the controlling Statute of Limitations.
The harm assertedly sustained by the plaintiff — injury to his reputation — is precisely the same as that caused by defamation; indeed, in describing the plaintiff’s cause of action for an “ intentional wrong ”, the Appellate Division acknowledged that, although ‘1 the causative acts are different from those in defamation, * * * the effect, that is, harm to reputation, is the same.” It is here that we find error in the Appellate Division’s determination. The broad reach of the common-law cause of action for defamation is indicated in the Restatement of Torts. ‘ ‘ A communication is defamatory ’ ’, its authors have written (§ 559), “ if it tends so to harm the reputation of another as to lower bim in the estimation of the community or to deter third persons from associating or dealing with him.” Thus, unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished. This is borne out by Comment a to section 559, *459 where it is noted that 41 The word £ communication ’ is used to denote the fact that one person has brought an idea to the perception of another.” In the case before us, the plaintiff complains, in effect, that the defendants ’ conduct ‘£ brought an idea ’ ’ that he was dishonest “ to the perception ” of the general public. It follows, therefore, that his cause of action must be deemed to fall within the ambit of tortious injury which sounds in defamation.
In applying a Statute of Limitations, this court declared some years ago, ££ We look for the reality, and the essence of the action and not its mere name.” (Brick v. Cohn-Hall-Marx Co., 276 N. Y. 259, 264.) Concluding as we do that this cause of action sounds in defamation, it would be highly unreal and unreasonable to apply some Statute of Limitations other than the one which the Legislature has prescribed for the traditional defamatory torts of libel and slander. Prior to this case, all reported causes of action for defamation were pleaded as either one or the other. Accordingly, in enacting a one-year Statute of Limitations for “libel” and “ slander ” (Civ. Prac. Act, § 51, subd. 3 [now CPLR 215, subd. 3]), the Legislature should be understood to have established the policy that any action to recover damages for injury to reputation must be begun within that period. A contrary result might very well enable plaintiffs in libel and slander eases to circumvent the otherwise short limitations period by the simple expedient of £ ‘ redescribing [the] defamation action to fit this new £ noncategory ’ ” of intentional wrong. (Kroner, et al., Torts, 1966 Annual Survey of American Law, pp. 209, 215.)
The plaintiff specifically alleges that£ £ in late October of 1959 * * * the full extent of the 1 fixing ’ of the £ 21 ’ quiz show became widely and publicly known.”[2] It is indisputable that, if at that time the defendants had accused the plaintiff of having knowingly been a party to the hoax, any suit against them for defamation would have been time-barred after the lapse of one year. In fact, the defendants never implicated the plaintiff in the wrongdoing at all and his reputation suffered only because the guilty were so numerous that the public, according to the *460 complaint, came to suspect everyone and to believe no one who had been associated with the quiz show. Under these circumstances, if the plaintiff has a cause of action, he should not be permitted to sue on it beyond the period within which he could have prosecuted a claim against the defendants for having caused the identical injuries by telling falsehoods about him. Since the complaint is dated September, 1961 — more than two years after the defendants’ acts upon which the plaintiff bases his cause of action — the court at Special Term properly dismissed it as untimely.
The order of the Appellate Division should be reversed, without costs, the first question certified answered in the negative, the second question certified answered in the affirmative and the order of Special Term dismissing the first cause of action of the complaint reinstated.
Judges Van Voorhjs, Burke, Scilefpi, Bergan and Keating concur; Judge Beeitel taking no part.
Order of Appellate Division reversed and that of Special Term, insofar as it dismissed the first cause of action of the complaint, reinstated, without costs. First question certified answered in the negative; second question certified answered in the affirmative.

. The complaint set forth five causes of action. The second, third and fifth causes of action were dismissed at Special Term and the plaintiff took no appeal from those portions of the dismissal orders. The fourth cause of action was brought against another contestant on the show who has never been served with process.

. The complaint further recites that it was in March, 1960 — more than one year prior to the commencement of the action — when the plaintiff's applications for a fellowship were denied.