**Beatrice HORSTEIN and Joseph Horstein, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 73 Civ. 3404.**

United States District Court, S. D. New York.

April 9, 1975.

Carl Kreisberg, New York City, for plaintiffs.

Simpson Thacher & Bartlett, by Ronald G. Russo, New York City, of counsel, for defendant, General Motors Corp.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Defendant General Motors has moved for an order granting judgment on the pleadings [1]—or, alternatively, for summary judgment dismissing the complaint [2]—in this negligence action whose underlying facts defy categorization.

---

1. Rule 12(c), Federal Rules of Civil Procedure.

2. Rule 56(b), Fed.R.Civ.Proc.

The grounds for defendant's motion are lack of proximate cause and the running of the allegedly applicable statute of limitations.

An understanding of the facts giving rise to this action is an indispensable prerequisite to resolution of the issues presented by defendant's motion. Plaintiffs Joseph and Beatrice Horstein allege in their complaint that on December 10, 1971 they lawfully parked their 1964 Chevrolet automobile on a public street in Brooklyn and left it unattended for a few hours. Upon returning to their car, they were confronted by two New York City police officers who, in a routine check of the cars parked on that street had ascertained that the car belonging to the Horsteins had an improper vehicle identification number ("VIN"). The plate on which the VIN was impressed bore the name "BUICK" and not "CHEVROLET", as it should have. Since the car was obviously a Chevrolet and not a Buick, the officers concluded that the VIN plate had been deliberately altered to conceal the fact that the vehicle had been stolen. As a result, they impounded the car and arrested Joseph Horstein for possession of stolen property. Mr. Horstein was taken into custody, booked, fingerprinted and incarcerated overnight, following which he was released "in contemplation of dismissal". The criminal charges against him were eventually dismissed. The vehicle itself was detained by the City of New York for over three months, during which time plaintiffs were deprived of the use and enjoyment of their car and were forced to use substitute means of transportation. When the car was finally returned, it was allegedly in a badly damaged condition, requiring "substantial" repairs.

Plaintiffs claim that the cause of all this misfortune was defendant's allegedly negligent manufacture and release from the factory of an automobile with an improper VIN plate. It is their further contention that had defendant conducted a reasonable and proper inspection of the vehicle before it left the factory, the defective VIN plate would have been noted and hopefully corrected, since defendant knew or should have known that an erroneous VIN plate, if detected by the police, would lead the police to conclude that the VIN plate had been deliberately altered so as to conceal the true identity of the car—a technique frequently employed by car thieves. Given the foregoing, plaintiffs claim that the arrest of Joseph Horstein was entirely foreseeable.

By reason of the three month delay in the return of her car, the substantial inconvenience to her occasioned thereby and the ultimate damaged condition of the car, Beatrice Horstein seeks damages of $10,000. As a result of his arrest and the subsequent criminal proceedings, Joseph Horstein claims to have suffered "(in addition to deprivation of his liberty) physical pain, mental anguish, anxiety, loss of time and public humiliation", to have "been exposed to incalculable damage to his good name, reputation and personal credit", and to have "expended and will incur [sic] substantial sums of money including expenses for legal services." Complaint, ¶ 20. For this, he demands judgment in the amount of $100,000.

With respect to Mrs. Horstein's $10,000 claim, defendant contends that its alleged negligence in releasing from the factory an improperly identified automobile was not the proximate cause of plaintiff's alleged injuries. Assuming, *arguendo*, that it was negligent in affixing an improper VIN plate on plaintiff's vehicle, defendant argues—citing Palsgraf v. Long Island Railroad (1928) 248 N.Y. 339, 162 N.E. 99—that detention of the car by the police and its return in a damaged condition more than three months later was not "a risk reasonably to be perceived". On the contrary, it claims that the complained of damage to the vehicle and the inconvenience to which plaintiffs were put as a result of the impoundment were caused exclusively by the intervening acts of the City of New York as a result, of claims

that it was relieved of any liability for its alleged antecedent negligence.

We disagree. It is entirely foreseeable that once a police officer determines that an automobile has an altered or otherwise improper VIN plate, he will seek to question—and, if necessary, detain—the possessor of the car on suspicion of theft. This is a fact of life, given the frequency with which automobile thieves alter VIN plates so as to avoid detection of stolen cars. Should a police officer conclude he has probable cause [3] to believe that a car with an improper VIN plate has been stolen, he will arrest the present owner and may impound the car. N.Y. Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, § 424(3). Once a car is impounded, it must, in accordance with New York City Police Department regulations, be searched so that an adequate inventory of property within the car may be made. It is conceivable that in the course of such a search, the contents of the car or the car itself might be damaged—particularly if the police had reason to believe that they might find contraband or the fruits of another crime therein.[4]

Whether the inordinate length of time which plaintiff's vehicle was detained and the extent of the alleged damage thereto were reasonably foreseeable is for the jury, and not the court, to determine. The requirement of reasonable foreseeability does not mean that the exact occurrence or the precise injury need be foreseen. All that is necessary is that defendant should have been able to foresee that some injury to some person might result from its negligent act. Hoggard v. Otis Elevator Co. (Sup.Ct., N.Y.Co., 1966) 52 Misc.2d 704, 276 N.Y.S.2d 681, 687, aff'd without opinion, 285 N.Y.S.2d 262 (A.D. 1st Dept.1967). We find that a jury could

properly conclude that impoundment, arrest and even damage to the car were reasonably foreseeable consequences of defendant's alleged negligent failure to affix the correct VIN plate to plaintiff's car.

Although it is true that a defendant's negligence will not be held the proximate cause of an injury to another where a "new and independent" agency has intervened and directly caused such injury, this does not mean that every intervening cause will operate to discharge the original negligent actor. *Id.* If such intervening cause were set in motion by the original wrongdoer, he—and not the intervening third party—"must answer for all consequences which may ensue in the ordinary course of events, even though such consequences are immediately and directly brought about by an intervening cause". *Id.* As the *Hoggard* court observed (at 687), the type of intervening cause which *does* operate to relieve defendant from liability is that

"which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated".

The acts of the N.Y.C. Police, rather than turning aside the natural course of events, intervened to "carry the matter through to [what a jury might find to have been] the foreseeable consequences". *Id.*, at 688. See also Sherman v. Concourse Realty Corporation (App.Div., 2d Dept., 1975) 365 N.Y.S.2d 239 (defendant landlord found liable for tenant's mugging despite intervening criminal act of third party who had gained entrance to apartment building by reason of a faulty buzzer system), and Daas v. Pearson (Sup.Ct., Kings

---

3. Section 422 of the N.Y. Vehicle and Traffic Law makes it a misdemeanor to possess a motor vehicle the VIN plate of which has been "destroyed, removed, defaced or so covered as to be effectively concealed".

4. The constitutionality of such searches has been consistently upheld by New York courts. See, for example, People v. Sullivan (1971) 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464, and People v. Butler (1974) 44 A.D.2d 423, 355 N.Y.S.2d 172.

Co.1971) 66 Misc.2d 95, 319 N.Y.S.2d 537, aff'd, 37 A.D.2d 921, 325 N.Y.S.2d 1011 (department store and its chief security officer found liable for police officer's injuries sustained in a collision with car of third party while speeding to answer false alarm turned in by defendants, despite intervening negligence of third party driver).

■ The other branch of defendant's motion—addressed to the timeliness of the second cause of action—is more esoteric. Defendant contends that Joseph Horstein's claim for relief, in which he claims to have suffered various injuries including damage to his reputation as a result of his arrest and incarceration, is in the nature of an action for defamation and is therefore governed by the one year statute of limitations applicable to libel and slander claims. New York Civil Practice Law and Rules, § 215(3). Since the arrest occurred on December 10, 1971, defendant argues, plaintiff's claim for reputation damages was barred as of December 11, 1972—nearly 8 months before the filing of the complaint. In support of its argument for dismissal of this claim, defendant relies on Chief Judge Fuld's opinion in Morrison v. National Broadcasting Company (1967) 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572. The plaintiff in that case, a university professor who had participated in a television quiz show which, unbeknownst to him had been rigged, sought damages from defendants on the ground that the exposure of the hoax two years later caused the public to believe that all the contestants—including him—were privy to the fraud and that, as a result, he had been "brought into public scorn, contempt, and obloquy . . . and his professional standing and reputation had been seriously and pecuniarily damaged". The Court, on a motion to dismiss the claim as time-barred, concluded that the harm allegedly sustained by plaintiff—injury to his reputation—was identical to that caused by defamation and thus the action was governed by the one year statute of limitations for defamation actions. *Id.*, 280 N.Y.S.2d at 644, 227 N.E.2d at 573. In reaching that conclusion, the Court noted that ". . . unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished". *Id.* Since the plaintiff was complaining that defendants' intentional conduct "brought an idea" that he was dishonest "to the perception" of the general public, it followed that his cause of action fell under the rubric of defamation. Restatement of Torts, § 559, Comment (a).

Unlike the plaintiff in *Morrison*, Joseph Horstein is not seeking recovery for damages to his reputation exclusively, nor does he claim that *defendant* communicated the idea to the public that he was a criminal. Rather, he asserts that defendant's negligent failure to affix the proper VIN plate to his car created a condition of affairs in which it was reasonably foreseeable that he would be mistakenly arrested for possession of stolen property, which arrest would deprive him of his liberty, cause him to suffer both physical pain and emotional trauma, expose him to public humiliation, damage his reputation and personal credit and cause him to incur substantial legal fees. Damage to his reputation was but one of many distinct consequences of the chain of events initially set in motion by defendant's asserted negligence and eventually carried to fruition by the New York City Police Department.[5] In that sense, the case at bar is analogous to those personal injury cases in which the plaintiff's injuries are aggravated by the further negligence of the treating physician. In such cases, the original tort-feasor, having set the stage by negligently injuring the plaintiff, is held liable for any further harm caused by the doctor and/or the hospital staff to whom the plaintiff

---

5. It is not now necessary to decide whether injury to reputation will be submitted to the jury as an element of damage.

went for treatment of his injuries. Derby v. Prewitt (1962) 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556; Milks v. McIver (1934) 264 N.Y. 267, 190 N.E. 487.

For the foregoing reasons, defendant's motion is denied. In so doing, however, we express no opinion as to the merits of plaintiffs' claims. That is for the jury and the jury alone.

So ordered.