**Tom U.U. OKURE, Plaintiff-Appellee,**

v.

**Javan OWENS and Daniel G. Lessard, Defendants-Appellants.**

**No. 171, Docket 86–7343.**

United States Court of Appeals, Second Circuit.

Argued Sept. 25, 1986.

Decided April 6, 1987.

Charles R. Fraser, Asst. Atty. Gen., State of N.Y., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., Howard L. Zwickel, Chief, Litigation Bureau, Judith T. Kramer, Asst. Atty. Gen., State of N.Y., New York City, of counsel), for defendants-appellants.

Joseph M. Brennan, Albany, N.Y. (Stephen J. Rehfuss, Sullivan, Rehfuss, Cunningham & Brennan, Albany, N.Y., of counsel), for plaintiff-appellee.

Burt Neuborne, Jack D. Novick, American Civil Liberties Union Foundation, New York City; Steven Shapiro, New York Civil Liberties Union, New York City; Linda

Flores, Kenneth Kimerling, Puerto Rican Legal Defense & Educ. Fund, Inc., New York City, of counsel, for amici curiae of the Puerto Rican Legal Defense & Educ. Fund, The American Civil Liberties Union and The New York Civil Liberties Union.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, John Woods, Donna Hill, Ellen Henak, Nora Freeman, Edward F.X. Hart, Office of the Corp. Counsel of the City of New York, New York City, of counsel, for amicus curiae City of New York.

Before VAN GRAAFEILAND, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

The plaintiff complained in the United States District Court for the Northern District of New York that defendants Owen and Lessard, State University of New York police officers, battered and beat him during an arrest on the SUNY campus in Albany. *Okure v. Owens*, 625 F.Supp. 1568 (N.D.N.Y.1986). The arrest and alleged beating took place on January 27, 1984, and this civil rights action brought pursuant to 42 U.S.C. § 1983 (1982) was filed twenty-two months later. The defendants moved to dismiss the complaint as barred by the claimed applicable one year New York statute of limitations, N.Y.C.P.L.R. § 215(3) (McKinney 1972).[1] Upon denial of the motion by Judge McCurn, we permitted this interlocutory appeal, taken pursuant to 28 U.S.C. § 1292(b) (1982) and Fed.R.App.P. 5(a). We agree with the district court and all parties that the choice of New York statutes of limitations established in *Pauk v. Board of Trustees of the City University of New York*, 654 F.2d 856 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982), is no longer appropriate in light of the Supreme Court's decision in *Wilson v. Garcia*, 471

---

**1.** The following actions shall be commenced within one year:

    ....

    3. an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the right of privacy under section fifty-one of the civil rights law.

N.Y.C.P.L.R. § 215 (McKinney 1972).

U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). We agree with the district court, and with the plaintiff, that the proper limitation to apply to all section 1983 claims in New York is three years, based on the state's general personal injury statute, N.Y.C.P.L.R. § 214(5).[2] Accordingly, we affirm.

## DISCUSSION

In *Wilson v. Garcia,* the Supreme Court decided that federal law governs selection of a statute of limitations for application to section 1983 claims and that a single limitations period in each state is to be selected from among existing statutes of limitations. *Wilson* characterizes section 1983 claims as general personal injury actions sounding in tort and bids us to select a limitations period in accord with that view.

The *Wilson* Court first reviewed 42 U.S.C. § 1988, which directs the application of common law and state statutes to fill gaps in the structure of federal civil rights legislation. 471 U.S. at 267–69 & nn. 13 & 16, 105 S.Ct. at 1942–43. It concluded, as we did in *Pauk,* 654 F.2d at 865–66, that the characterization of section 1983 claims for statute of limitations purposes is a matter of federal law and that only the length of the limitation period is governed by state law. *Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943. Once the state legislature has applied state standards to choose limitation periods for various causes of action, the courts must apply federal principles to choose the cause of action most appropriate to the governance of section 1983 claims. *Id.* at 269–70, 105 S.Ct. at 1943–44.

The Court next decided that the choice of a limitations period should be singular and applied uniformly in order to approximate, though imperfectly, the numerous and diverse claims catalogued under section 1983. *Id.* at 272–73, 105 S.Ct. at 1945–46. It rejected *ad hoc* selection of a particular statute of limitations to correspond to the gravamen of each individual section 1983

complaint, because such tailoring would be contrary to the imputed congressional preference for uniformity, simplicity and certainty. *Id.* at 273–75, 105 S.Ct. at 1946–47. Having concluded that section 1988 "is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims," *id.* at 275, 105 S.Ct. at 1946, the Court went on to explore the range of available statutes.

The Court found it unlikely that the Forty-Second Congress in adopting section 1983 intended to apply either a catchall period of limitations for claims based on violations of statutory rights or a period designed to limit actions for wrongs committed by state officials. *Id.* Rather, the Court looked to the circumstances in 1871 surrounding passage of section 1983 and decided that Congress was most directly interested in restoring peace and justice to the postbellum South. The Court noted that the section 1983 remedy, initially directed at the tortious atrocities committed by the Ku Klux Klan, today has evolved to encompass "a broad range of potential tort analogies, from injuries to property to infringements of individual liberty." *Id.* It concluded that both the nature of the section 1983 remedy and the federal interest in ensuring that the state limitations period not discriminate against that remedy demand characterization of all section 1983 claims as general personal injury actions, sounding in tort. *Id.* at 280, 105 S.Ct. at 1949.

### 1. *The Nature of the Section 1983 Remedy*

The issue crisply presented here is what limitations period *Wilson* commands for section 1983 actions where the forum state has two statutes of limitations governing personal injury claims. The defendants have argued forcefully that the Forty-Second Congress and the *Wilson* Court would find the proper analog of section 1983 claims to be claims for intentionally inflict-

---

**2.** The following actions must be commenced within three years:

 . . . .

5. an action to recover damages for a personal injury except as provided in sections 214–b and 215.

N.Y.C.P.L.R. § 214 (McKinney Supp.1986).

ed personal injuries. Taking their lead from the Supreme Court's retrospective survey of the Ku Klux Klan's purposeful campaign to deny "decent citizens their civil and political rights," 471 U.S. at 276, 105 S.Ct. at 1947, the defendants urge the conclusion that the archetypal section 1983 claim is the intentional tort, whose limitations period is provided in New York by N.Y.C.P.L.R. § 215(3). *See Trott v. Merit Dep't Stores*, 106 A.D.2d 158, 484 N.Y.S.2d 827, 829 (1st Dep't 1985).

Even though civil rights violations are typically, and perhaps necessarily, intentional, that characterization is not controlling. We believe that the *Wilson* Court's choice of the term "general" to describe personal injury torts analogous to section 1983 claims was neither casual nor superfluous. Rather, we read therein a command that our choice of statute of limitations from New York law be expansive enough to accommodate the diverse personal injury torts that section 1983 has come to embrace so as not to exclude claims that stray from a precisely drawn analogy.

The defendants argue that the intentional torts addressed by the one year limitation in N.Y.C.P.L.R. § 215(3) are just as general as those addressed by the three year limitation of N.Y.C.P.L.R. § 214(5), which the defendants characterize as unintentional. Reply Br. of Appellants at 3. However, we cannot ignore the plain structure of the New York statutes which gives plaintiffs three years to commence "an action to recover damages for a personal injury except [section 215(3), which provides one year for] an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the [statutory] right of privacy...." N.Y.C.P.L.R. §§ 214(5), 215(3). By nature, section 214(5) is general; section 215(3) is more specific and exceptional. This dichotomy survives no matter how many similar intentional torts are

judicially added to those enumerated in section 215(3).

*Wilson* instructs us to look beyond the nature of the section 1983 claim to the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal claim. 471 U.S. at 276, 105 S.Ct. at 1947. Having been guided in this case to the general personal injury action of N.Y.C.P.L.R. § 214(5) as fairly analogous by nature to the section 1983 claim, we turn to the federal interest.

2. *The Federal Interest*

The *Wilson* Court has already eliminated the most likely sources of discrimination by rejecting limitations designed to protect state officials and limitations associated with privileges extended to the people by state legislatures. 471 U.S. at 279, 105 S.Ct. at 1949. Proper consideration of the federal interest moves us also to ensure that the limitations period of section 214(5) is long enough to effectuate the policies embedded in section 1983.

We are not persuaded that because personal injuries actionable under section 1983 are typically intentional, they are necessarily apparent to the victim at the time they are inflicted. Many injuries to personal rights are less visible than the simple battery alleged here. We need only consider the examples of valid section 1983 claims catalogued in *Wilson*: impermissible demands for loyalty oaths, restraints on freedom of speech or association and bans on interracial marriage are injuries to personal rights in which the tortious nature may not be immediately obvious. *See* 471 U.S. at 273–74 n. 31, 105 S.Ct. at 1946 n. 31.

Even where the injury itself is obvious, the constitutional dimensions of the tort may not be. This situation might arise where it is unclear that the tortfeasor acted under color of state law or that the act was illegal. It may be that the legality of the act complained of has not previously been adjudicated.[3] Because recognition prob-

---

**3.** Judge Van Graafeiland in his dissenting opinion suggests that we rejected this argument in *Fiesel v. Board of Education of the City of New York*, 675 F.2d 522 (2d Cir.1982). In selecting

an appropriate statute of limitations here, we are not abandoning *Fiesel*, in which we held that a valid limitations period is not disturbed by later shifts in controlling law. *Id.* at 524–25.

lems such as these are endemic in section 1983 litigation, we believe that there must be time for plaintiffs to reflect and to probe. The three year period of limitations provided by N.Y.C.P.L.R. § 214(5) accommodates the many complex section 1983 claims.

## CONCLUSION

New York has determined that the rights of its citizens as plaintiffs and defendants in personal injury tort actions are properly balanced by applying a three year statute of limitations to all claims other than those enumerated in section 215(3). We conclude that section 214(5) is the general personal injury statute most analogous to section 1983 claims. Further, the three year limit of section 214(5) more faithfully represents the federal interest in providing an effective remedy for violations of civil rights than does the restrictive one year limit of section 215(3).

The order denying the motion to dismiss is affirmed.

VAN GRAAFEILAND, Circuit Judge, dissenting:

In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court held that the statute of limitation for all section 1983 claims must be borrowed from state law governing "the tort action for the recovery of damages for personal injuries." *Id.* at 276, 105 S.Ct. at 1947. The application of that rule posed no difficulty in *Wilson*, since the New Mexico statutes there under consideration supplied only one period of limitation for all actions of this kind. As Justice O'Connor correctly observed in her dissenting opinion, however, the *Wilson* rule provides no clear guidance for selecting a statute of limita-

tion in States such as New York, which "def[y] the newly minted rule by supplying not one but *two* periods that govern various injuries to personal rights." *Id.* at 286, 105 S.Ct. at 1953. Accordingly, in selecting between New York's two limitation periods, this Court must follow the settled federal practice of borrowing the most analogous statute which is not inconsistent with the Constitution and laws of the United States. *Id.* at 267–68, 105 S.Ct. at 1942–43. *Burnett v. Grattan*, 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984); 42 U.S.C. § 1988.

In order to select the most analogous New York statute, it is necessary, of course, to understand the nature of the New York limitation scheme. The New York Civil Practice Law and Rules ("CPLR") allows one year to bring an action to recover damages for those personal injuries covered by CPLR § 215(3), and three years for other personal injury actions under CPLR § 214(5). In explaining his refusal to adopt the one-year limitation for section 1983 claims, the district judge asserted that section 215(3) was a narrowly drawn statute applicable only to certain specific intentional torts. 625 F.Supp. 1568, 1570–71. This misconceives the scope of that section.

Section 215(3) prescribes a one-year limitation period for eight intentional torts: assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, and a violation of the statutory right of privacy, a list that is broad enough to include almost all of the intentional personal injuries recognized at common law. *See Trayer v. State*, 90 A.D.2d 263, 268, 458 N.Y.S.2d 262 (1982). *See also Gates v. Spinks*, 771 F.2d

There, a plaintiff alleging constitutional torts by a municipal body claimed that she had been prevented from timely asserting her section 1983 claim by *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part, Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which provided municipalities with immunity from such actions. Fiesel had promptly recognized her injury and its constitutional dimensions, but elected not to risk the legal ex-

pense of arguing that *Monroe* should be overruled. When the Supreme Court subsequently held in *Monell* that municipalities were no longer immune from suit under section 1983, the limitations period for Fiesel's claim had long since expired. Fiesel did not argue that she was prejudiced by the brevity of the statutory period, but rather that *no* statute of limitations could begin to run until the law changed in a way that was favorable to her cause of action.

916, 919 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986). That feature of the statute is no coincidence. The legislative history of section 215(3) reveals that the actions which it lists were subjected to a shorter period of limitation because they "involve torts of an intentional character, and the effect of their perpetration is known promptly to the person injured." *Second Preliminary Report of the Advisory Committee on Practice and Procedure,* Leg.Doc. No. 13, at 537–38 (1958).

In addition, it is now clear that the one-year period for intentional torts is not limited to the eight intentional injuries specifically mentioned in section 215(3). In determining the appropriate statute of limitation, the New York courts "look for the reality, and the essence of the action and not its mere name." *Morrison v. National Broadcasting Co.,* 19 N.Y.2d 453, 459, 280 N.Y.S.2d 641, 227 N.E.2d 572 (1967) (quoting *Brick v. Cohn-Hall-Marx Co.,* 276 N.Y. 259, 264, 11 N.E.2d 902 (1937)). Thus, in *Schulman v. Krumholz,* 81 A.D.2d 883, 439 N.Y.S.2d 160 (1981) *(mem.),* the court reasoned that a cause of action for tortious harassment was in the nature of an intentional tort, and therefore was subject to "the one-year Statute of Limitations applicable to intentional torts." *Id.* at 883, 439 N.Y.S.2d 160. Other New York courts have followed the same reasoning in applying section 215(3) to unlisted intentional injuries such as abuse of process, *Hansen v. Petrone,* 124 A.D.2d 782, 508 N.Y.S.2d 500 (1986) *(mem.),* and the intentional infliction of emotional distress, *id; Parker v. Port Authority of New York and New Jersey,* 113 A.D.2d 763, 493 N.Y.S.2d 355 (1985) *(mem.); Weisman v. Weisman,* 108 A.D.2d 852, 485 N.Y.S.2d 568 (1985) *(mem.); Goldner v. Sullivan, Gough, Skipworth, Summers and Smith,* 105 A.D.2d 1149, 482 N.Y.S.2d 606 (1984) *(mem.).* Section 215(3) has been given a similar expansive construction by federal district courts. *See Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1198 (S.D.N.Y.1985); *Rio v. Presbyterian Hosp. in City of New York,* 561 F.Supp. 325, 328 (S.D.N.Y.1983); *Pratt v.*

*Bernstein,* 533 F.Supp. 110, 117–18 (S.D.N. Y.1981).

Scholars, too, generally identify section 214 as the one which governs unintentional torts and section 215 as the statute for intentional torts. *See, e.g.,* Siegel, *New York Practice,* at 37 (1978); 2 Carmody-Wait 2d § 13.74 at 419; 35 N.Y.Jur. § 35 at 527. In the words of District Judge Joseph McLaughlin, an authoritative commentator on the CPLR:

> What distinguishes the torts governed by [CPLR 215(3)] from those governed by CPLR 214(5) is an intent by the defendant to inflict consequences upon the plaintiff. CPLR 214(5) governs negligence actions, generally those where the defendant does not inten[d] to affect the plaintiff.

*Practice Commentaries on New York CPLR* at 308 (McKinney 1987 Supp.). A similar generalized characterization is also made quite routinely by the New York courts, which describe section 214 as "the three-year negligence Statute of Limitations", *Trott v. Merit Dep't Store,* 106 A.D.2d 158, 159, 484 N.Y.S.2d 827 (1985), and section 215 as "the governing Statute of Limitations for intentional torts," *Wheeler v. State of New York,* 104 A.D.2d 496, 498, 479 N.Y.S.2d 244 (1984) *(mem.).* *Accord Rosner v. Maimonides Hosp.,* 77 A.D.2d 652, 429 N.Y.S.2d 1022 (1980) *(mem.); Castracani v. Mahoney,* 132 Misc.2d 276, 503 N.Y.S.2d 666 (1986). In view of the foregoing, the district court erred in characterizing section 214 as a general rule governing most personal injury actions and section 215 as a narrow exception, confined to a few of the intentional torts. On the contrary, the two limitation periods actually operate to allow one year for almost every intentional injury to the person, and three years for virtually every unintentional personal injury.

Although the selection of proper limitation periods has always been a troublesome problem for the courts, a choice for section 1983 cases, made on an intentional rather than unintentional personal injury basis, is both accurate and simple in application. The legislative history of section 1983 re-

veals that the enactment of the Civil Rights Act in 1871 was motivated primarily by congressional concern over the "campaign of violence and deception in the South, fomented by the Ku Klux Klan," which was depriving citizens of their civil rights through murder and other acts of physical violence. *Wilson v. Garcia,* 471 U.S. at 276, 279, 105 S.Ct. at 1947, 1949. Even today, the vast majority of civil rights actions under section 1983 involve intentional, rather than unintentional, deprivations of constitutional rights. Of all the nearly three dozen landmark cases cited in *Wilson v. Garcia,* 471 U.S. at 273–74, 105 S.Ct. at 1945–46, and Justice Blackmun's law review article, 60 N.Y.U.L.Rev. 1 (1985), cited in *Wilson* at 274 n. 31, 105 S.Ct. at 1946 n. 31, not one successfully challenged the legality of an unintentional or negligent act.

In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court recently held that mere negligence never can establish a violation of the due process clause—the clause under which the overwhelming majority of section 1983 actions are brought. Mere negligence also has been found insufficient to establish a section 1983 claim in other frequently litigated constitutional areas. *See Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (cruel and unusual punishment); *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (equal protection).

In sum, there simply is no room for disagreement that section 1983 originally was directed at acts of deliberate wrongdoing and that, even today, it is relied upon almost invariably as a safeguard against the intentional deprivation of civil rights. For this reason, I cast my lot with those Courts of Appeals which hold that state limitation periods governing essentially all intentional personal injuries are better analogized to section 1983 claims that limitation periods confined almost entirely to unintentional torts. *See, e.g., Mulligan v. Hazard,* 777 F.2d 340 (6th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986); *Gates v. Spinks,* 771 F.2d 916 (5th Cir.1985), *cert. denied,* — U.S. —, 106

S.Ct. 1378, 89 L.Ed.2d 603 (1986); *Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986). A number of district courts have done the same, *e.g., Chris N. v. Burnsville,* 634 F.Supp. 1402 (D.Minn.1986), including several within this Circuit, *DiVerniero v. Murphy,* 635 F.Supp. 1531 (D.Conn.1986); *Weber v. Amendola,* 635 F.Supp. 1527 (D.Conn.1985); *Green v. Coughlin,* 633 F.Supp. 1166 (S.D. N.Y.1986); *Saunders v. State of New York,* 629 F.Supp. 1067 (N.D.N.Y.1986).

My colleagues believe, however, that the New York negligence statute of limitations is the better analogy for section 1983 claims because of "the plain structure of the New York statutes", which have styled the intentional limitation period as an exception to the period for unintentional injuries. My colleagues reason, as did the district court, that section 214(5) must be selected as the better analogy in view of the Supreme Court's characterization of section 1983 claims as "[g]eneral personal injury actions, sounding in tort." *Wilson v. Garcia,* 471 U.S. at 279, 105 S.Ct. at 1949. Although the New York Court of Appeals has not squarely addressed the merits of the issue, it appears that it would reach the same conclusion. *See 423 South Salina Street, Inc. v. City of Syracuse,* 68 N.Y.2d 474, 510 N.Y.S.2d 507, 503 N.E.2d 63 (1986). I do not agree.

I do not believe that the *Wilson* Court's choice of the term "general" to describe personal injury torts analogous to section 1983 claims was intended to control the choice now before us. Such reasoning places too much weight on a single word and loses sight of the Supreme Court's reminder that "the language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 341, 99 S.Ct. 2326, 2332, 60 L.Ed.2d 931 (1979). The analogy of section 1983 claims to "general personal injury actions" is found in the middle of a paragraph explaining the basis for the Court's rejection of the New Mexico Tort Claims Act as the proper analogy. The context of the pas-

sage unmistakably reveals that the Court used the term "general" personal injury actions simply to distinguish those actions from suits against public officials. *See Burroughs v. Holiday Inn,* 621 F.Supp. 351, 352–53 (W.D.N.Y.1985). When the term "general personal injury actions" is used in this manner, section 215(3) fits the description better in 1983 cases than section 214(5), because section 215(3) includes almost all of the traditional personal injury torts.

I believe my colleagues place undue emphasis on the "plain structure" of the New York statutes. Their reasoning is not supported by the Supreme Court's passing reference to "general personal injury actions," and is in fact inconsistent with the Court's clear direction that we are to select the state limitation period that is most analogous to the elements of the section 1983 cause of action and to the congressional purpose in enacting that statute. *Wilson v. Garcia,* 471 U.S. at 268, 105 S.Ct. at 1943. Section 215(3) most nearly meets those requirements.

As an alternative basis for their holding, my colleagues conclude that the three-year period for unintentional torts "more faithfully represents the federal interest in providing an effective remedy for violations of civil rights than does the restrictive one-year limit" for intentional torts. This misconceives our role in borrowing state law under section 1988, by suggesting that we are to select the statute which gives the broadest protection to the federal interest in providing a remedy for civil rights violations. The federal interest in favor of protecting civil rights claims must be balanced against, and is at some point outweighed by, the federal interest in prohibiting the prosecution of stale claims. *Wilson v. Garcia,* 471 U.S. at 271, 105 S.Ct. at 1944. *See also Board of Regents v. Tomanio,* 446 U.S. 478, 488, 100 S.Ct. 1790, 1797, 64 L.Ed.2d 440 (1980). As the Supreme Court has observed in the context of qualified immunity, federal rules of decision for section 1983 actions must be fashioned with an eye toward "the balance ... between the interests in vindication of citizens' constitutional rights and in public officials' effec-

tive performance of their duties." *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). It is overly simplistic to suggest that the protection of constitutional rights is the only interest at stake in this case, or that we must select the statute which best promotes that single interest. That approach has been repeatedly rejected by the Supreme Court, which has observed:

A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant.

*Board of Regents v. Tomanio, supra,* 446 U.S. at 488, 100 S.Ct. at 1797 (quoting *Robertson v. Wegmann,* 436 U.S. 584, 593, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554 (1978)). If section 215(3) is the most analogous New York statute for 1983 claims, we must look to that statute, so long as it is not so short as to be inconsistent with the federal policy favoring enforcement of civil rights.

The only section of the Reconstruction Civil Rights Act which contains a statute of limitation, 42 U.S.C. § 1986, allows only one year in which to bring an action for damages against anyone who knowingly fails to prevent a conspiracy to violate another's right to equal protection. As three concurring Justices reasoned in *Burnett v. Grattan, supra,* 468 U.S. at 61, 104 S.Ct. at 2935, section 1986 demonstrates a congressional determination that a one-year limitation period affords a reasonable time for the commencement of a civil rights action. This view is shared by the Courts of Appeals from other Circuits, which have shown no hesitation since *Wilson v. Garcia* in borrowing one-year personal injury limitations for section 1983 actions. *Walker v. City of Bowling Green,* 803 F.2d 722 (6th Cir.1986) (unpublished opinion); *Jones v. Shankland,* 800 F.2d 77, 80 (6th Cir.1986); *Berndt v. State of Tennessee,* 796 F.2d 879, 883 (6th Cir.1986); *Bunch v. Bullard,* 795

F.2d 384, 388 n. 2 (5th Cir.1986); *McMillan v. Goleta Water Dist.*, 792 F.2d 1453, 1456 (9th Cir.1986); *Washington v. Breaux*, 782 F.2d 553, 554 n. 1 (5th Cir.1986) (per curiam); *Altair Corp. v. Pesquera de Busquets*, 769 F.2d 30, 31–32 (1st Cir.1985). No Court of Appeals confronting this issue since *Wilson* has held that a one-year personal injury limitation period would be inherently too short.

Differing from the consensus in other Circuits, my colleagues conclude, for reasons that I find entirely unpersuasive, that federal policy requires a period of more than one year for section 1983 plaintiffs "to reflect and to probe". Unlike my colleagues, I do not believe that any more than a tiny fraction of the victims of civil rights violations are not immediately aware of their injury. The experience of the federal courts with section 1983 litigation reveals that those who have been unlawfully denied their freedoms of belief, speech, and association—to use the majority's own examples—almost invariably are prepared to commence a civil rights action within a matter of months, if not weeks. *See, e.g., Zablocki v. Redhail*, 434 U.S. 374, 378, 98 S.Ct. 673, 676, 54 L.Ed.2d 618 (1978); *Wooley v. Maynard*, 430 U.S. 705, 708–09, 97 S.Ct. 1428, 1432, 51 L.Ed.2d 752 (1977). Although there may be a few cases in which civil rights violations are not readily apparent to their victims, these cases usually raise the question of when the limitation period starts, not how long it runs. Because a section 1983 claim does not accrue until the plaintiff knows or has reason to know of the injury which is the basis for his action, *Barrett v. United States*, 689 F.2d 324, 333 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983), we need not select the statute of limitation merely to accommodate the rare case where the plaintiff's injury is not immediately obvious.

The majority's suggestion that section 1983 plaintiffs require more than a year to investigate and explore the basis for their claims is not a persuasive argument for rejecting the one-year statute. This Court has substantially relaxed both the amount of detail required in section 1983 complaints, *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir.1986); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983), and the amount of evidence the plaintiff is required to collect before filing suit. *Oliveri v. Thompson*, 803 F.2d 1265, 1279 (2d Cir. 1986). "A plaintiff does not have to be prepared to meet a summary judgment motion as soon as the complaint is filed." *Id.* Moreover, if, as is often the case, the section 1983 plaintiff's complaint contains a cause of action based on a state intentional tort with a one-year statute of limitation, plaintiff will want to commence suit within one year in any event.

Finally, my colleagues assert that section 1983 plaintiffs should be given more than one year to file suit in order to accommodate a situation in which the legality of the act complained of may be unsettled or not yet decisively adjudicated. The identical argument was rejected by this Court in *Fiesel v. Board of Education of the City of New York*, 675 F.2d 522 (2d Cir.1982), where we held that a section 1983 plaintiff could not justify her delay in bringing suit by the fact that her right of recovery previously had been far from settled and actually had been barred by controlling Supreme Court authority. As this Court explained then:

> The only sure way to determine whether a suit can be maintained is to try it. The application of the statute of limitations cannot be made to depend upon the constantly shifting state of the law, and a suitor cannot toll or suspend the running of the statute by relying upon the uncertainties of controlling law. It is incumbent upon him to test his right and remedy in the available forums.

*Id.* at 524–25 (quoting *Versluis v. Town of Haskell*, 154 F.2d 935, 943 (10th Cir.1946)).

Indeed, because there is a recognized public interest in allowing public officials to effectively discharge their discretionary authority in areas where the law has not

been clearly charted, *Davis v. Scherer, supra,* 468 U.S. at 195–96, 104 S.Ct. 3019–20, the "unsettled law" argument cuts two ways. In the context of qualified immunity, the Supreme Court has held that the absence of a clear previous adjudication of the legality of a public official's actions is a decisive reason for overriding the otherwise pressing federal interest in allowing the victim of a constitutional tort to recover damages from that official. *Id.* at 190, 194–96, 104 S.Ct. at 3017, 3019–20. It is therefore quite ironic that my colleagues urge the changes in section 1983 jurisprudence as a reason for selecting a longer limitation period.

## CONCLUSION

When federal law provides no rule of decision for section 1983 actions, "§ 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby." *Robertson v. Wegmann, supra,* 436 U.S. at 593, 98 S.Ct. at 1996–97. As the Supreme Court recently has observed in a similar context, the role of the federal judiciary in fashioning rules of decision for section 1983 actions is "not to make a free-wheeling policy choice." *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986).

I agree with the Courts of Appeals from other Circuits which hold that a limitation period governing all intentional torts is better analogized to section 1983 claims than a limitation period confined almost entirely to unintentional personal injuries. I also agree with the consensus of the other Courts of Appeals that a one-year limitation period for section 1983 is not so short as to be inherently inconsistent with the policies underlying the Civil Rights Act. For those reasons, I would reverse the district judge's holding that section 1983 claims in New York are governed by the three-year limitation period and would hold that such claims are governed by the one-year period set forth in CPLR § 215(3).